**WILMINGTON MEDICAL CENTER,**
**Appellant (Employer-Appellant),**

v.

**UNEMPLOYMENT INSURANCE APPEAL**
**BOARD and Grant W. Fortner, et al.,**
**Appellees.**

Superior Court of Delaware,
New Castle.

Submitted July 22, 1975.

Decided Sept. 29, 1975.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for Wilmington Medical Center.

Jay H. Conner, Wilmington, for Unemployment Insurance Appeal Board.

BIFFERATO, Judge:

This is an appeal from a decision of the Unemployment Insurance Appeal Board upholding the Referee's decision against the Wilmington Medical Center (Employer). Employer is contesting a claim by the State Department of Labor for reimbursement for unemployment compensation benefits paid to its former employees.

As a nonprofit organization, Employer was not covered by the Unemployment Compensation Law until January 1, 1972 when the law was amended pursuant to a federal mandate to extend mandatory coverage to hospitals. (58 Del.Laws, Ch. 143, § 11). Under the existing system of taxing, this newly acquired status would have subjected Employer to a 2.7% tax on all wages paid to its employees during the first four years of Employer's coverage under the program. After this four-year period, Employer would be assessed according to its record of claims activity under the Unemployment Compensation Law. At that point it could be assessed for a tax as low as 0.1% or ½7th of the tax paid over the initial four-year period.

To mitigate the harshness of the flat 2.-7% initial tax, the 1972 law was coupled with an option allowing nonprofit organizations to elect to pay either the above-mentioned direct assessment tax already applied to business employers or to make reimbursement according to a system set forth in the statute. 19 Del.C. § 3345(c)(3).

Employer elected the nonprofit reimbursement option. The effect of this election was to make Employer responsible only for unemployment benefits actually paid to its former employees by the State. Thus, if no benefits were paid in a given year, Employer would pay no money into the fund. The statute states that a nonprofit employer who elects the reimbursement method of payment must pay into the Unemployment Compensation Fund "an amount equal to the amount of the regular benefits and of one half of the extended benefits paid, that is attributable to service in the employ of such nonprofit organization, to individuals for weeks of unemployment which begin during the effective period of such election." 19 Del.C. § 3345(c)(3).

The Department seeks reimbursement for compensation paid to former employees of Employer who left Employer under circumstances which rendered them ineligible for benefits at the time but who later became eligible upon leaving a subsequent employer. The Department claims that since the amount of compensation paid to Employer's former employees is based upon their salaries while working for Employer, regardless of the intervening employer, such amount is "attributable to service in the employ of" Employer as stated in the reimbursement statute. 19 Del.C. § 3345.

Employer insists that such a construction of the statute is an unfair and inaccurate interpretation. Employer points out that had it elected to make payments according to the method applied to business employers, it would not have been liable for compensation paid to its former employees who were legally ineligible for compensation due to the circumstances surrounding their separation from Employer. There is no expressed intent on the part of the Legislature to treat reimbursing employers differently from experience rated and assessed employers. The only evidence presented to justify such different treatment is a memorandum from the U. S. Department of Labor, Manpower Administration, to the Regional Manpower Administrator for the State of New York dated February 19, 1971. (R. 97–98). However, this memorandum is not controlling and the interpretation of the statutory language in question is a matter for State resolution as clearly

shown by the language of the Federal statute which requires nonprofits to pay:

" . . . amounts equal to the amounts of compensation attributable *under the State law* to service performed in the employ of such organization . . .."
26 U.S.C. § 3303(e) and § 3309(a)(2). (Emphasis added).

The phrase "attributable to service" is novel to the Unemployment Compensation Law. It could be construed to refer to compensation based upon all salaries paid to those employed by a nonprofit organization or it could be construed as pertaining only to that service which would be compensable in light of 19 Del.C. § 3315. The State urges the former, and Employer the latter interpretation.

■ In resolving ambiguities in a law, weight should be given to the intent of the Legislature in writing that law. The preamble to Chapter 359, 58 Del.Laws, which corrected certain oversights in Chapter 143, 58 Del.Laws, stated that the purpose of the Bill which became Chapter 143, 58 Del.Laws was to amend the Delaware Unemployment Compensation Law to bring it into conformity with the Federal law.

An examination of the Senate Finance Committee Report on the pertinent Federal statute, 26 U.S.C.A. § 3309(a)(2), which required the States to provide nonprofit organizations with the election under discussion, reveals the following statement concerning the purpose of the new law:

"Under the reimbursement method of financing, a nonprofit organization whose workers experience no compensated unemployment in a year would have no unemployment insurance costs for that year. The committee considers it appropriate that these organizations, which are often dependent upon charitable contributions, should not be required to share in the costs of providing benefits to workers in profit-making enterprises." U.S.Code Congressional and Administrative News, 1970 (91st Congress, 2d Sess.) p. 3618.

■ It appears that the intent of Congress in enacting the reimbursement method of financing was to enable nonprofit organizations to escape the burden of contributing greater amounts to the Unemployment Compensation Fund than the costs which were incurred directly by actions of the nonprofit organizations in a given year. This was seen by the Senate as desirable public policy in light of the charitable nature of such organizations.

■ This apparent policy is further reflected in the Senate Report in the phrase "no compensated unemployment." A distinction is implied here between compensated and uncompensated unemployment. Uncompensated unemployment would be either unemployment which qualified for compensation but went uncompensated due to a failure of the ex-employee to make a claim, or unemployment which did not qualify for compensation due to a § 3315 disqualification, such as a discharge for good cause or a voluntary separation without good cause. The Senate Report indicates that such situations were not intended to give rise to unemployment costs for nonprofit organizations. To interpret the phrase "attributable to service" as meaning any compensation based upon earlier paid wages despite an intervening § 3315 disqualification would violate the apparent intent of the Legislature by imposing costs upon nonprofit organizations for what in the ordinary case of business employers would not be classified as compensated unemployment.

For the reasons stated above, the decision of the Unemployment Insurance Appeal Board is reversed. It is so ordered.