**SPRINGFIELD GENERAL OSTEO-PATHIC HOSPITAL, Respondent,**

**v.**

**INDUSTRIAL COMMISSION of Missouri and Division of Employment Security, Appellants.**

**Nos. 9756, 9757.**

Missouri Court of Appeals, Springfield District.

June 15, 1976.

Terry C. Allen, Jefferson City, for Div. of Employment Security.

Charles B. Fain, Jefferson City, for Ind. Commission of Missouri.

Donald W. Jones, Christopher J. Stark, Prewitt, Jones & Karchmer, Springfield, for respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

This is an appeal by the Industrial Commission of Missouri and the Division of Employment Security from a decision of the Circuit Court of Greene County reversing in part the decision of the Commission in three unemployment compensation cases.[1] The essential question presented is whether or not the Circuit Court of Greene County had jurisdiction to determine the chargeability of benefits to which three of the hospital's former employees were entitled. The Commission insists the court had no such authority; the hospital as vigorously contends that it did. A construction of § 288.210, RSMo 1969, is required.

Deborah White filed a claim for unemployment compensation benefits on June 6, 1973. The hospital was notified and protested informally by letter. A deputy determined that White voluntarily left her work without good cause attributable to her work or her employer, but further determined that she had terminated her initial disqualification by earning wages equal to ten times her weekly benefit since the date she quit. § 288.050(1)(1).[2] The hospital appealed this determination, contending that White was not eligible because she had not actively and earnestly sought work as required by § 288.040(1)(2); alternatively, the hospital maintained that it could in no event be charged with any benefits due White because it was an employer directly involved in the initial disqualifying act. § 288.100(1)(4)(a).[3] The referee found against the hospital on the issue of White's availability for work, but made no specific ruling on benefit charges or the hospital's exemption. At the hearing before the appeals tribunal, the referee advised counsel

---

1. We take note that § 8 of the Omnibus State Reorganization Act, Laws of Mo.1974, pps. 530, 542, transferred all the powers, duties and functions of the Industrial Commission to a Department of Labor and Industrial Relations, and we note further that the act became effective before the trial of this case was concluded. The trial court allowed the trial to proceed without substitution. Rule 52.13(c), V.A.M.R. We shall, for convenience, refer to the parties as they appeared in the trial court.

2. Which provides, in material part:
   "(1) [A] claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds
   (1) That he has left his work voluntarily without good cause attributable to his work or to his employer."

References to statutes are to RSMo Supp. 1973, V.A.M.S., except where otherwise specifically noted.

3. Section 288.100(1)(4)(a), (b), the "noncharge" or exemptive subsections here in issue read:
   "(4)(a) No benefits based on wages paid prior to the date of any act for which a claimant is disqualified under section 288.050 shall be chargeable to any employer directly involved in such disqualifying act.
   (b) In the event the deputy has in due course determined under paragraph (a) of subdivision (1) of subsection 1 of section 288.050 that a claimant quit his work . . . for the purpose of accepting a more remunerative job with another employer which he did accept and earn some wages therein no benefits based on wages paid prior to the date of the quit shall be chargeable to the employer the claimant quit."

for the hospital that the issue of chargeability "cannot be raised in this hearing because [the benefits due White] have not yet been charged against your client . . . there is no decision could be made and no appeal could be filed until they have been charged." Counsel answered that he recognized "that might be a possibility" but made it clear he wished to raise the chargeability issue "as early as possible". The hospital subsequently applied for review by the Industrial Commission; its application was denied.

Mary Hasler, another of the hospital's former employees, filed her claim for benefits May 29, 1973. The hospital protested this claim. A deputy determined that Hasler left her work voluntarily without good cause attributable to her work or to her employer, but further found that her initial disqualification was terminated because her first claim week began more than one year after the date of the disqualifying act. § 288.050(3). The hospital appealed the deputy's determination on the ground that Hasler had not been available for work as required by § 288.040(1)(2) and on other grounds not material here. The referee determined, among other things, (a) that Hasler left her work voluntarily without good cause attributable to her work or to her employer, and (b) that she quit her work at the hospital for the purpose of accepting a more remunerative job, that she did accept the more remunerative job and earned some wages therein. The referee also found that any disqualification was terminated because Hasler's first claim week began more than one year after the initial disqualifying act, and further found that her initial disqualification (quitting without cause) was terminated because she had earned wages equal to ten times her weekly benefit amount. The hospital requested review by the Commission, asserting that the referee should have specifically found that any benefits due Hasler were not chargeable to the hospital by reason of

the noncharge provisions of § 288.-100(1)(4)(a) and (b). This application for review was also denied.

Elsie Satterfield, also a former hospital employee, filed her claim for benefits on June 19, 1973. The hospital protested this claim by letter, attaching a note in which Satterfield advised the hospital that she had "another job with lot more pay, so this is my notice". A deputy determined that any disqualification had been terminated by lapse of time. § 288.050(3). The hospital appealed on the ground that the claimant had not been available for work, and upon the further ground that it could in no event be held chargeable with any benefits to which Satterfield might be entitled. The appeals tribunal held that any disqualification had been terminated because the first benefit week began more than one year after the otherwise disqualifying act, but remanded the claim to the deputy to determine the claimant's eligibility with respect to vacation pay she had received. The referee also specifically held in this case that the issue of benefit charges was not properly before him. A petition for review filed by the hospital was denied by the Commission.

All three decisions were appealed to the Circuit Court of Greene County.[4] The petitions for review are quite lengthy, but in each case the hospital sought a declaration that none of the claimants was eligible for benefits, and further prayed a determination that in any event the noncharging provisions of § 288.100(1)(4)(a) and (b) relieved the hospital of any liability. The Commission's answer is likewise wordy and imprecise, but given favorable intendment, it challenges the court's jurisdiction to determine the applicability of the exemptive sections quoted because the proceeding on appeal is a matter "not involving a claimant" within the meaning of § 288.210, RSMo 1969. An additional issue tendered by the pleadings is whether or not the hospital as a

4. The Commission denied the hospital's applications for review, but in such case the decision of the appeals tribunal is deemed to be the decision of the Commission for purposes of review. § 288.200(1), RSMo 1969; *Crawford v. Industrial Commission*, 482 S.W.2d 739, 741 (Mo.App.1972); *LaPlante v. Industrial Commission*, 367 S.W.2d 24, 27 (Mo.App.1963).

reimbursing employer is entitled to the benefit of the noncharging provisions of § 288.-100(1)(4)(a) and (b). We shall discuss this last issue briefly, but we have concluded that it is unnecessary to resolve it and that it probably would be imprudent to attempt to do so.

All three appeals were consolidated in the circuit court. That court reviewed the record and concluded: 1) that there was substantial evidence on the whole record to support the Commission's finding that all three claimants were eligible for benefits; 2) that the hospital's claim of exemption under the noncharging subsections of § 288.100 was properly and timely raised and that the Commission erred as a matter of law in not holding the hospital exempt under those provisions, and 3) that the hospital was not deprived of the benefits of § 288.100(1)(4)(a) and (b) by electing to become a reimbursing employer as permitted by § 288.090(3)(1)(a).

As indicated, the key and dispositive question presented is whether the trial court had jurisdiction to adjudicate the chargeability of the benefits to which the three claimants were entitled. The issue of the claimants' eligibility has not been briefed nor argued and must be considered abandoned. *La Grange Reorg. School Dist. No. R–VI v. Smith*, 312 S.W.2d 135, 136–137[1] (Mo.1958).

Section 288.210, RSMo 1969, governs appeals to the courts in employment security cases, and reads in pertinent part as follows (emphasis ours):

> "Within ten days after a decision of the commission has become final, the director or any other party aggrieved thereby may secure judicial review . . . by commencing an action *in the circuit court . . . of the county of claimant's residence or, in respect to those matters not involving a claimant . . . the circuit court of Cole County* . . . .

> *Notwithstanding the foregoing, where judicial review is sought in respect to a decision involving more than one claimant, the action may be commenced in the circuit court . . . of the county in which the interested employer has a place of business in which one or more of the claimants were employed."*

Section 288.210, RSMo 1969, was enacted by the General Assembly in 1951 as part of a general revision of the Employment Security Law, Laws of Mo.1951, pps. 594–595, and the sentence beginning with the words "notwithstanding the foregoing" was added in 1961. Laws of Mo.1961, pps. 435–436. This statute provides a complete and exclusive procedure for obtaining judicial review of decisions of the Commission in the courts, and as the Commission contends, failure to follow the procedure specified would be fatal to the hospital's appeal. *Hansen v. Division of Employment Security*, 520 S.W.2d 150, 152[4] (Mo.App. 1975); *Duzer v. Industrial Commission*, 402 S.W.2d 616, 618[1][2] (Mo.App.1966). However, the merits of these appeals do not depend upon the hospital's compliance, or lack of compliance, with the procedural requirements of § 288.210, RSMo 1969. The rationale of the controlling and persuasive precedents varies a good deal, but we are left in no doubt that the quoted part of § 288.210, RSMo 1969, vests exclusive jurisdiction to determine "matters not involving a claimant" in the Circuit Court of Cole County. *State ex rel. State Tax Commission v. Luten*, 459 S.W.2d 375, 378[3, 4] (Mo. banc 1970); *Warnecke v. State Tax Commission*, 340 S.W.2d 615, 618–619[2][3][4] (Mo.1960).[5] Therefore, if the issue of chargeability is a matter "not involving a claimant", and provided the phrase "in respect to those matters not involving a claimant" as applied to these multiple claims was not nullified by addition of the sentence beginning "notwithstanding the

---

5. See also *Sweitzer v. Industrial Commission*, 394 Ill. 141, 68 N.E.2d 290, 294–295[8–17] (1946); *Minnesota Valley Canning Co. v. Rehnblom*, 242 Iowa 1112, 49 N.W.2d 553, 555[6][7] (1951); *Brown v. LTV Aerospace Corp.*, 394 Mich. 702, 232 N.W.2d 656, 664–666[7][8][9] (1975); *Scott v. Nevada Employment Security Department*, 70 Nev. 555, 278 P.2d 602, 603–604[2][3] (1954).

foregoing" by Laws of Mo.1961, at 435–436, the decision of the trial court exempting the hospital is coram non judice.

In construing § 288.210, RSMo 1969, we bear several general principles in mind. We must attempt to ascertain the intent of the General Assembly in enacting the statute; we do so by considering the whole Act and its legislative history. We look to the circumstances and usages of the time; we seek to promote the purposes and objects of the statute and to avoid any strained or absurd meaning. *St. Louis Southwestern Ry. Co. v. Loeb*, 318 S.W.2d 246, 252[1] (Mo. banc 1958); *In re Dugan*, 309 S.W.2d 137, 143[7–12] (Mo.App.1957). The statutory language we have to interpret has been part of our law without significant amendment for 35 years, and therefore a cardinal hypothesis of our opinion is that we must determine the intent of the enacting legislature, not that of a later or the current one. As Professor Dickerson has put the matter:

"The principle that the court should focus on the date of enactment is supported . . . by the general judicial assumption that the orienting force in statutory interpretation is the search for legislative intent, a concept that, despite its limitations, most courts consider basic to the interpretation of statutes. This means the intent, if any, of the enacting legislature, not that of a later or the current one. In the performance of the courts' cognitive function, legislative intent that does not culminate in an enactment may be generally ignored; so may postenactment changes in the relevant context.

"To read statutes against current, rather than original, usage and environment would subject statutory meanings to uncontrolled and often capricious circumstance." [6]

We further bear in mind that if ambiguity exists, the interpretation of the ambiguous provision by administrative officials is entitled to serious consideration in determining the meaning thereof. *State ex inf. Anderson v. St. Louis County*, 421 S.W.2d 249, 254[4] (Mo. banc 1967); *In re Graves*, 325 Mo. 888, 899–900, 30 S.W.2d 149, 153–154[7] (banc 1930); *Huntsville Trust Co. v. Noel*, 321 Mo. 749, 757, 12 S.W.2d 751, 754[2] (1928); E. Crawford, Statutory Construction § 219 (1940).

The phrase "matters not involving a claimant" first came into our Employment Security Law [7] in 1941. The Act was extensively amended by the 61st General Assembly, and in particular a new section was enacted and codified as § 9432 A, Mo.R.S. 1939.[8] Section 9432 A provided in pertinent part as follows (emphasis added):

"(a) Any determination or decision of the Commission under Section 9423(i)(5), Section 9426 A(d), Section 9427(c)3(E), (h) and (i), Section 9428, Section 9432, and Section 9436(d) and (j) shall, after its rendition, be subject to rehearing and reconsideration upon the application of any interested party . . . and judicial review thereof shall be permitted [only after exhaustion of administrative remedies] . . . .

(b) Within ten days after the decision of the Commission has become final, any party aggrieved thereby may secure judicial review thereof by commencing an action *in the circuit court . . . of the county of the claimant's residence or in respect to those matters not involving a claimant . . . the circuit court of Cole County . . . .*"

An examination of the sections referred to in paragraph (a) of § 9432 A discloses that:

6. R. Dickerson, The Interpretation and Application of Statutes 126 (1975).

7. The Employment Security Law, now codified as Chapter 288 of the statutes, was originally enacted in 1937, Laws of Mo.1937, p. 574. It was formerly called the Unemployment Compensation Law and we shall refer to it as the Act.

8. Laws of Mo.1941 at 620–621.

1. Section 9423(i)(5) authorized the Commission to act as a factfinding tribunal in determining whether or not services performed by a particular person for wages constituted employment subject to the Act;

2. Section 9426 A(d) provided that the Commission might determine, upon application or of its own motion, whether a given employing unit constituted an employer subject to the Act and whether or not services performed in connection with the business of that unit constituted "employment" for purposes of the Act;

3. Section 9247(c)3(E) authorized the Commission to provide a hearing for any employer in respect to his contribution rate and to enter an order fixing [the amount of] such contributions; § 9427(h) authorized the Commission to determine whether a successor employing unit should stand in the same position as its predecessor for purposes of the Act, including the predecessor's contribution (tax) rate; § 9427(i) permitted the Commission to determine an employer's contribution rate on the basis of the best information available, if a taxable employer failed to file any report required to determine its contribution rate, or if the information filed was insufficient for the purpose.

4. Section 9428 authorized certain employing units to elect to terminate coverage under the Act, and required the Commission to determine whether or not a given employer was eligible to terminate its liability, and to approve its election to do so;

5. Section 9436(d) established a procedure to obtain reassessment of delinquent or estimated contributions; § 9436(j) set up a procedure to obtain an adjustment or refund of contributions erroneously collected.

6. Section 9432 prescribed a procedure for claiming benefits under the Act.

■ So, when § 9432 A is considered together with the sections and subsections to which it refers, it becomes apparent that it speaks of two types of decisions or determinations: 1) those concerning the imposition, assessment and collection of the required tax, and 2) those concerning a claimant's eligibility to receive benefits. Jurisdiction to review those decisions or determinations pertaining to tax liability is conferred upon the Circuit Court of Cole County; appeals involving a claimant's eligibility for benefits are to be heard in the circuit court of the county of the claimant's residence.

■ It must be conceded that some degree of ambiguity inheres in the phrase "matters not involving a claimant"; in a very broad sense, *every* decision or determination of the Commission "involves" a claimant, or perhaps a large number of claimants. The legislative intent might have been more clearly expressed had the draftsman used the words "matters not involving a claim for benefits". Nevertheless, whether we regard this possible ambiguity as being a "semantic" or mere "syntactic" ambiguity, see Dickerson, op. cit. at 45–46, resort to the context in which the phrase was originally used makes its meaning clear. Moreover, whatever ambiguity there is in the phrase "matters not involving a claimant" has been resolved by administrative usage and interpretation. The Act itself originally authorized the Commission to administer the law and develop procedural usage. Laws of Mo.1937, p. 574, § 5. In these proceedings the Commission took and now assures us it has always taken the position that decisions concerning the imposition, assessment and collection of the contributions required by the Act must be appealed to the Circuit Court of Cole County. As we have said, the Commission's interpretation is persuasive, even though it is not controlling. *State ex inf. Anderson v. St. Louis County*, supra, 421 S.W.2d at 254[4]; Crawford, op. cit. at 394–395. Additionally, we are authorized to consider the effect of a different construction of the statute; the law is said to favor a construction which avoids unreasonable results.

*Maryland Casualty Co. v. General Electric Co.*, 418 S.W.2d 115, 118[3] (Mo. banc 1967); *Laclede Gas Co. v. City of St. Louis*, 363 Mo. 842, 848, 253 S.W.2d 832, 835[3] (banc 1953). The Act required and now requires the Commission to maintain its central office in Cole County. § 9425, Mo.R.S.1939; see *State ex inf. McKittrick v. Murphy*, 347 Mo. 484, 493, 148 S.W.2d 527, 532[14, 15] (banc 1941). Presumably, its records are kept there. The statutes and the Commission's regulations [9] require the maintenance of separate accounts for each contributing or reimbursing employer, § 288.100(1)(1), and contributions due are assessed to the individual (in some cases joint) account on the basis of information furnished by the employer. To allow an employer's liability to be determined piecemeal in the various judicial circuits of this state, and to require the Commission to adjust its assessments accordingly would place an intolerable burden on the Commission's administrative machinery.

There remains for discussion the effect of the addition of the second sentence of § 288.210, RSMo 1969, by Laws of Mo.1961 at 435–436. That sentence, as material, reads (emphasis ours):

> "Notwithstanding the foregoing, where judicial review is sought *in respect to a decision involving more than one claimant,* the action may be commenced *in the circuit court . . . of the county in which the interested employer has a place of business in which one or more of the claimants were employed.*"

■ The question is whether the addition of this sentence modifies or pro tanto nullifies the jurisdictional limitations imposed by the first sentence of § 288.210, RSMo 1969. We think not. The sentence just quoted refers to multiple claims *involving* a claimant, not to those which do *not* involve a claimant. Moreover, we know, and the Commission's regulations recognize, that many employers have workers who live or reside in several different areas (counties). Special reports are required of these "multi-area" employers. See Regulation 16, effective July 1, 1951. To require each employee of a multi-area employer to file his claim for benefits in the county of his residence would obviously hinder the prompt determination of claims for benefits as far as workers for multi-area employers are concerned; in our opinion, the purpose of the 1961 amendment was simply to allow multi-area employees to obtain review of their claims for benefits in the county where their employer has its office or factory. We therefore believe, and hold, that the Circuit Court of Greene County was without jurisdiction to determine the respondent hospital's liability for benefit charges, and that that part of its judgment exempting the hospital is void.

■ In so holding, we realize our conclusion runs counter to current notions that all matters at issue should be decided in one proceeding, if possible, in the interest of "judicial economy". See, e. g., *State ex rel. Garrison Wagner Co. v. Schaaf*, 528 S.W.2d 438 (Mo. banc 1975); *State ex rel. Farmers Ins. Co., Inc. v. Murphy*, 518 S.W.2d 655 (Mo. banc 1975). We realize additionally that it may be burdensome for reimbursing employers, as distinguished from regular contributing employers, to seek review of benefit charges in Cole County. We are not, however, dealing with a procedural rule of court, which may be treated with some elasticity; § 288.210, RSMo 1969, provides an exclusive procedure which must be followed. *Hansen v. Division of Employment Security*, supra, 520 S.W.2d at 152[3]; *Duzer v. Industrial Commission*, supra, 402 S.W.2d at 618[2]. Judicial dissatisfaction with a statutory scheme is not a sufficient reason to ignore or distort plain legislative intent; the remedy, if any, lies with the General Assembly and not with the courts.

There is one additional point which we must notice and discuss very briefly, although we do not undertake to decide it. The hospital's liability for benefit charges, if any, derives from changes in the Employment Security Law required by the 1970

---

9. Which we are *required* to notice. § 288.210, RSMo 1969.

amendments to the Federal Unemployment Tax Act, Pub.L. No. 91–373 (Aug. 10, 1970). We shall not consider those changes in detail.[10] It is sufficient for our purposes to note that there are differing opinions whether "contributing", i. e., nonprofit employers, are entitled to the benefit of exemptive provisions comparable to § 288.-100(1)(4)(a) and (b). One jurisdiction has held that allowing nonprofits the benefit of such exemptive provisions would give reimbursing employers a "free ride" at the expense of contributing employers. *Mann Home v. Morgan*, 529 P.2d 964 (Ore.App. 1974). Another has tentatively adopted a different view. *Wilmington Medical Center v. Unemployment Ins. Appeal Board*, 346 A.2d 181 (Del.Super.1975).[11] At one point we believed it would be necessary to determine whether § 288.100(1)(4)(a) and (b) applied to the hospital, and deferred consideration of this appeal pending resolution of the Delaware case. Further study convinced us that the trial court had no jurisdiction to determine the hospital's liability for benefit charges, and there is, therefore, no reason to discuss this point further.

To reiterate and summarize our conclusions we find that the claimants' eligibility is not challenged; the trial court's finding that all three claimants were eligible is affirmed. We further find that the Circuit Court of Greene County had no jurisdiction to determine the hospital's liability for benefit charges; that part of the judgment holding that the hospital is exempt and is not chargeable is therefore void and is reversed. When and if the hospital is found liable for reimbursement that decision may be appealed to the Circuit Court of Cole County. The causes are remanded to the Department of Labor and Industrial Relations, which shall proceed in a manner not inconsistent with this opinion. It is so ordered.

All concur.

**10.** See L. Hanley, Recent Developments in Employment Security, 28 Mo.B.J. 276 (1972).

**11.** At this writing, the Delaware controversy is before the Supreme Court of Delaware.