HEART OF AMERICA TOBACCO & CANDY CO., Respondent,

v.

James P. AYLWARD, Jr., et al., Appellants.

No. 64192.

Supreme Court of Missouri, En Banc.

Aug. 16, 1983.

---

Michael F. Dandino, Associate County Counselor, Kansas City, for appellants.

Harold W. Bird, II, Kansas City, respondent.

WELLIVER, Judge.

The issue in this case is whether respondent, Heart of America Tobacco & Candy Company, is entitled to replacement of wasted Jackson County cigarette stamps or a refund of the value of the stamps plus interest. The trial court held that respondent was entitled to a monetary refund equivalent to the value of wasted stamps. Jackson County and James P. Aylward, Jr.,

1. All statutory references are to RSMo 1969 unless otherwise indicated.

the Jackson County Collector at the time this suit was filed, have appealed. We have jurisdiction because the case involves construction of the Missouri revenue laws. Mo. Const. art. V, § 3. We vacate and remand.

Section 210.320, RSMo 1969,[1] in part authorized any first class county with all or the greater part of a city of 350,000 or more inhabitants to impose a cigarette tax to help defray the cost of operating juvenile detention facilities and providing other children's services. Any tax imposed was to be collected by the Division of Collection of the Department of Revenue, which would retain one percent of the tax to defray its own costs and distribute the remainder to the county. § 210.320(4). Subsection (5) provided in relevant part that the "tax shall be paid and stamps affixed in the same manner as is provided by chapter 149, RSMo, for the state cigarette tax." § 210.-320(5). The Director of Revenue was directed to promulgate "reasonable and necessary regulations" for collection of the tax. § 210.320(6).

Pursuant to this statutory authority Jackson County enacted the maximum tax of two and one-half mills per cigarette in 1971. Respondent, which wholesales cigarettes and other tobacco products in Jackson County, was required to affix a Jackson County cigarette tax stamp to each package of cigarettes it sold.[2] Like the state cigarette tax stamps, the Jackson County stamps were purchased from the Division of Collection. Respondent was reimbursed for the stamps when the cigarettes were sold to retailers, and the retailers in turn were reimbursed by consumers who purchased the cigarettes for consumption.

■ For the period between February 15, 1973, and June 1, 1976, respondent purchased Jackson County tax stamps under written protest pursuant to § 139.031(1). In May 1973 respondent brought this action to contest the validity of the tax on constitutional and other grounds. In Counts I

2. References in this opinion to cigarette tax stamps are intended also to include ink meter impressions made on cigarette packages.

and II respondent sought to recover $715,-000 it claimed it had paid in Jackson County cigarette taxes during the period in question. In Count III it sought to recover from Jackson County $50,000 for "incurred expense and sustained loss in attempting to comply with said unconstitutional statute [§ 210.320]." The trial court properly dismissed Count III on the ground that it failed to state a claim upon which relief could be granted.

The case was tried upon a stipulation of facts. In that stipulation respondent abandoned its claim for the entire $715,000 and instead sought two smaller items of damage. First, respondent claimed $14,300 on the theory that it was entitled to a two percent discount on the cigarette stamps it had purchased during the period in question. Second, respondent claimed a refund of $8,048, plus interest, for stamps that were wasted because they were affixed to packages of cigarettes that were never sold or that were sold but recalled because of damage or spoilage. The parties stipulated that $8,048 worth of stamps were wasted between February 15, 1973, and June 30, 1975, and that respondent was entitled to "refunds from the Department of Revenue" therefor.

The trial court held that respondent was entitled to recover $8,048 plus interest from July 1, 1976. It is this judgment that has been appealed.[3] Respondent does not contest the amount of the judgment, so neither the constitutional issue nor the question whether respondent was entitled to a two percent discount on its Jackson County stamp purchases is before us. The only issue for our resolution is whether respondent is entitled to replacement of the wasted stamps or a refund of the value of the stamps plus interest.

3. Given the precise correlation of the stipulated amount of wasted stamps and the amount of the trial court's judgment, we infer that the trial court intended that respondent be reimbursed for the wasted stamps. The trial court's judgment recited that the court found "in favor of Plaintiff [respondent] on Counts II and III of its Petition." The judgment for $8,048 plus interest necessarily was rendered on Count II,

Appellants contend that § 210.-320(5), which refers to the state cigarette tax procedures under in Chapter 149, establishes an exclusive statutory procedure by which a refund is to be sought and that respondents are not entitled to seek a refund with this action. If this action had been brought after 1975, this argument might have some force. From the authorization of a county cigarette tax in 1969 until December 31, 1975, however, the Director of Revenue failed to promulgate implementing regulations under § 210.320 to provide a procedure for replacement of wasted stamps or redemption of unused stamps. Section 210.320(5) refers to Chapter 149, but this Court has held that regulations promulgated under Chapter 149 do not effectuate § 210.320. *State v. Raccagno,* 530 S.W.2d 699, 701–02 (Mo.1975). The replacement or refund procedure is now prescribed by the statute and the regulations, *see* § 210.320(6), RSMo 1978; 12 C.S.R. 10–16.020(1), .110 (1977), but at the time respondent commenced this action the protest statute appeared to be the only available procedure. Appellants argue that, as stipulated, the Department of Revenue informed respondent by April 25, 1972, that it would replace wasted stamps.[4] Apparently the parties did not seek to conform their pleadings to the stipulation or to the regulations adopted December 31, 1975. In any event, the fact that the Department of Revenue told respondent it would replace wasted stamps does not alter the fact that until the regulations were promulgated, there was no authorized replacement procedure. The statute provided for the Division of Collection to collect the tax, § 210.320(4), but it did not provide for replacement of wasted stamps. On these facts we cannot say that this action is an improper method for respondent to seek reimbursement for wasted stamps.

for Count III had previously been dismissed, and that dismissal was never appealed.

4. The stipulation also indicates that before April 25, 1972, the Department of Revenue informed respondent that it could not replace wasted county tax stamps.

We believe, however, that the trial court erred in holding that respondent was entitled to a monetary refund plus interest. Nothing in the statutory scheme at the time this suit was brought contemplated anything other than replacement of stamps that had been wasted, *see* § 149.040, and the disputed funds were not placed in escrow pending resolution of this litigation. If the statute did not contemplate a monetary refund, it *a fortiori* did not contemplate the payment of interest.[5] The only relief to which respondent is entitled is replacement of the wasted stamps. The parties have stipulated that $8,048 worth of stamps were wasted, and the trial court's money judgment was for that principal sum. We therefore hold that respondent is entitled to replacement of $8,048 worth of stamps and not a monetary refund. We recognize that the Department of Revenue, which now issues the stamps, is not a party to this suit. We nevertheless perceive no statute of limitations problem, for with regard to the Jackson County tax stamps here at issue the Department of Revenue serves only as the agent of Jackson County, which has been a party to this suit since its inception.

The judgment of the trial court is vacated, and the cause is remanded with directions to enter judgment for replacement of $8,048 worth of Jackson County cigarette tax stamps.

All concur.

---

5. We are aware that the legislature has now provided that the Director of Revenue "may make refunds or exchange county tax stamps or meter units." § 210.320(6), RSMo 1978. *See also* § 149.031, RSMo 1978. The intent of a later legislature in changing the statute to provide for a monetary refund, however, has no application to this case. *See Springfield Gen. Osteopathic Hosp. v. Industrial Comm'n*, 538 S.W.2d 364, 369 (Mo.App.1976). We therefore need not, and do not, decide in this case whether interest is recoverable whenever a monetary refund is allowed.