STATE of Missouri, Respondent,

v.

**Judith MORIARTY, Appellant.**

**WD 50535.**

Missouri Court of Appeals,
Western District.

Jan. 30, 1996.

Richard G. Callahan, Pros. Atty., Cole County, Jefferson City, for respondent.

Stuart R. Berkowitz, St. Louis, Rodolfo Rivera, Clayton, for appellant.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

ELLIS, Presiding Judge.

Judith K. Moriarty (Moriarty) was indicted for issuing a false certificate in violation of § 570.110.[1] A jury found Moriarty guilty of the offense, a Class A misdemeanor, and she was ordered to pay a fine of one thousand dollars. She appeals her conviction.

■ Moriarty raises two principal points of error, the first asserting instructional error, and the second challenging the sufficiency of the evidence to support her conviction. When an attack is made on the sufficiency of the evidence to support a conviction, we accept as true all evidence favorable to the state, including all favorable inferences to be

---

1. All statutory references are to RSMo 1994, unless otherwise stated.

drawn therefrom, and disregard all evidence and inferences to the contrary. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). The test is whether, when the evidence is so viewed, a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty. *State v. Chunn*, 701 S.W.2d 578, 580 (Mo.App.1985). Viewed in this manner, the evidence establishes the following.

Moriarty was elected Secretary of State for the State of Missouri at the general election in 1992, and was serving in such capacity all times relevant hereto, unless otherwise noted. One of the duties of the Secretary of States' office is the filing of candidates for state elective office. § 115.353. Tim Moriarty is the son of appellant Judith K. Moriarty, and in March, 1994, he was employed by the Division of Labor Standards of the Missouri Department of Labor. At that time, he was contemplating running for State Representative of the 56th House District.

On March 21, 1994, Tim Moriarty traveled to Jefferson City, Missouri to meet with his supervisor, Colleen A. Baker, to discuss his candidacy. They discussed the potential problems with Tim's simultaneous employment with the state and campaign for public office. Ms. Baker told Tim she would make the necessary inquiries to determine whether he could retain his state job and pursue his campaign. Tim informed Ms. Baker that March 29, 1994, was the filing deadline, and he would need an answer from her before that date in order to file. Ms. Baker testified at trial that at the conclusion of the meeting, it was her understanding Tim was going to wait for her response before filing for candidacy.

After his meeting with Ms. Baker, Tim met appellant at the Office of the Secretary of State. At about 5:30 p.m., Ms. Moriarty called Barbara Campbell, one of three clerks responsible for accepting Declarations of Candidacy, into her office to inform her Tim was interested in running for State Representative in the 56th District. Ms. Moriarty then asked Ms. Campbell to help Tim fill out his paperwork so that it would be "out of the way" when he finally decided to run for office. Ms. Campbell indicated that it was

after 5:00 p.m. and Tim could not be filed. Ms. Moriarty responded she did not want Tim to be filed, only to have the paperwork prepared for when he firmly decided to run for office.

Ms. Campbell and Tim then sat down at the desk of Nadine Barrows, another clerk responsible for candidate filings, and in whose desk the paperwork was kept. Tim completed a Candidate Worksheet which provided the information used to generate a Declaration of Candidacy form. He also paid in cash the fifty dollar fee the Office of Secretary of State collected for the candidate's political party. Ms. Campbell signed and dated a receipt verifying Tim had paid this fee. Thereafter, Ms. Campbell took the worksheet, cash, and receipt and attached them together with a paperclip and placed them in the back of Ms. Barrows' drawer, behind the place daily candidate filings were kept. Ms. Campbell told Tim she would hold the paperwork and await instruction from him or his mother about when he was going to go ahead and file. Tim indicated that would be great and he would contact his mother when he decided to file. At the close of the business day on March 21, 1994, a cumulative list of candidates who had filed for office was printed; Tim Moriarty's name was not on the list.

In the late morning on March 29, 1994, the last day of filing, Ms. Campbell asked Ms. Moriarty whether Tim was going to file. Thirty minutes later, Ms. Campbell again asked Ms. Moriarty whether Tim was going to appear and file for office. Ms. Moriarty told Ms. Campbell that Tim was going to file, but he was not going to appear. She then directed Ms. Campbell to find a time when there were no other candidates and few staff members in the office and file Tim for office. At approximately 1:15 p.m., Ms. Campbell began Tim's filing. She took Tim's Candidate Worksheet out of Nadine Barrows' desk and time-stamped it at the time clock used by every other candidate who files for office; the time stamped on the worksheet was March 29, 1994, at 1:19 p.m. Ms. Campbell then delivered the time-stamped worksheet to Ms. Barrows who entered the information into the computer and generated the Decla-

ration of Candidacy form. Ms. Barrows attached the printed form to the worksheet and receipt and placed all three in her desk drawer with the other filings for the day. No signatures were placed on the Declaration of Candidacy form because Tim was not present. At the close of the business day, Tim's papers were transported along with all other filings to the Elections Division. As a result, the cumulative list of candidates included Tim Moriarty and showed he filed on March 29, 1994, at 1:19 p.m.

In early May, 1994, Ms. Moriarty asked a staff member to obtain a copy of Tim's Declaration of Candidacy from the Elections Division because she needed information from the form to prepare her son's campaign finance disclosure report. When the form was delivered to her she discovered it was missing both Tim's and Ms. Campbell's signatures. Ms. Moriarty summoned Ms. Campbell into her office to ask why Tim's Declaration of Candidacy was unsigned. Ms. Campbell responded, "Judi, if you'll remember, Tim's signature is not on it because Tim was not present the day that, that it was filed." Ms. Moriarty ordered Ms. Campbell to go immediately to the Elections Division and sign Tim's form. She further instructed Ms. Campbell to not tell anyone where she was going or what she was doing and to talk only to Jeff Carroll (Deputy Secretary for Elections Services) or Gene Wiseman (Director of the Division of Elections) because "too many people know about this already." Furthermore, Ms. Campbell was ordered to report to Ms. Moriarty that the task had been completed.

Ms. Campbell left and went to the Elections Division where Gene Wiseman was waiting. She was escorted into a storage room where filing boxes were sitting on a table. Wiseman removed Tim's Declaration of Candidacy from one of the boxes and laid it on the table for Ms. Campbell to sign. Tim's signature was still missing; however, Ms. Campbell signed the form as instructed. She returned to Ms. Moriarty's office and reported that she had signed the form. Ms. Moriarty thanked her and the conversation ended.

At about this same time (early May), Tim Moriarty received a telephone message on his answering machine requesting that he come to the Elections Division to sign his Declaration of Candidacy form. Tim drove to Jefferson City, appeared at the Elections Division, and signed the form (which had previously been signed by Barbara Campbell). The actions outlined above resulted in a certificate at the bottom of Tim's Declaration of Candidacy that stated Tim Moriarty had personally appeared before Barbara Campbell on March 29, 1994, at 1:19 p.m., and signed his Declaration of Candidacy form, swearing or affirming that the information contained therein was true; a certification that was false.

Moriarty was subsequently charged by indictment with, among other things, violation of § 570.110 (a class A misdemeanor); Issuing a False Instrument or Certificate. A jury trial was held, and on September 10, 1994, the jury found Moriarty guilty of issuing a false certificate. The trial court entered judgment against Moriarty and ordered her to pay a fine of one thousand dollars. This appeal ensued wherein, as noted previously, she asserts two principal points of error. The first addresses a variety of alleged errors regarding Instruction No. 10. The second challenges the sufficiency of the evidence to support her conviction.

Moriarty contends the trial court committed prejudicial error when it submitted Instruction No. 10, the verdict director for Count III, which charged her with "Issuing a False Certificate." Instruction No. 10 read, in pertinent part, as follows:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that at all times relevant herein, the defendant and certain designated employees, including Barbara Campbell, were authorized by law to take acknowledgement of Declarations of Candidacy and to issue official certificates to the effect that the candidate appeared, subscribed and swore or affirmed to the information contained in the Declaration of Candidacy, and

Second, that in late April or early May, in the County of Cole, State of Missouri, the defendant purposely directed and caused Barbara Campbell to certify to an authentication to a Declaration of Candidacy, that Candidate Tim Moriarty had personally appeared on March 29, 1994, and had subscribed and sworn or affirmed to the facts contained in his Declaration of Candidacy, and

Third, that at that time, the Certificate and Declaration of Candidacy was partly blank in that Tim Moriarty had not yet signed the Declaration of Candidacy and said Certificate and Declaration further contained a false statement in that Tim Moriarty did not appear and subscribe to the Declaration of Candidacy on March 29, 1994, and

Fourth, that at that time the defendant knew that the Certificate and Declaration of Candidacy was partly blank or that it contained a false statement, and

Fifth, that defendant did not act with the reasonable belief her conduct was lawful as submitted in Instruction No. 12. then you will find the defendant guilty under Count III of issuing a false certificate. . . .

Moriarty contends that MAI–CR 3d 324.26 is the approved jury instruction to be used in cases alleging violation of § 570.110 and that Instruction No. 10 does not mirror the approved instruction, nor is it an appropriate modification of MAI–CR 3d 324.26. She therefore asserts the trial court erred in giving the instruction and that she was prejudiced thereby.

■■■ Moriarty has not preserved this point, or any of her arguments under it, for our review. She did not object to Instruction No. 10 during the instruction conference. Under Rule 28.03 [2] as it existed at the time of her trial in September, 1994, she was not required to do so.[3] However, "specific objec-

tions to given instructions . . . shall be required in motions for new trial unless made on the record at the time of trial." Rule 28.03. Neither Moriarty's Motion for New Trial nor the Supplement to her Motion for New Trial raised the claims of instructional error she now asserts. The sweeping allegation in paragraph 7 of her Motion for New Trial that Instruction No. 10 "erroneously stated the law" is insufficient. Rule 28.03; *State v. Howell,* 818 S.W.2d 681, 684 (Mo. App.1991) (objections to instructions must be specific). Thus, Moriarty is requesting plain error review pursuant to Rule 30.20. Plain error review is discretionary, Rule 30.20, and our Supreme Court has indicated such discretion should be exercised only where a claim of plain error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995).

■■■ When an MAI–CR instruction is applicable under the law and the Notes on Use, the instruction is to be given to the exclusion of any other instruction. Rule 28.02(c); *State v. Harnar,* 833 S.W.2d 25, 27 (Mo.App.1992). A trial court's giving of an instruction in violation of the rule constitutes error, the prejudicial effect of which is to be judicially determined. Rule 28.02(f); *State v. Livingston,* 801 S.W.2d 344, 348 (Mo. banc 1990). Such error is presumptively prejudicial absent a clear showing to the contrary. *Id.* However, instructional error is seldom plain error, and to demonstrate plain error with regard to an instruction, Moriarty must establish not mere prejudice, but rather a manifest injustice or miscarriage of justice. *State v. Brokus,* 858 S.W.2d 298, 302 (Mo. App.1993). While there is no precise formula for determining the existence of plain error, some guidance exists. In *State v. Nolan,* 872 S.W.2d 99 (Mo. banc 1994), our Supreme Court stated:

> unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The revised rule retains the requirement that objections be specific, and that they must also be raised in the motion for new trial.

---

**2.** All references to the Rules of Criminal Procedure are to those in effect at the time of Moriarty's trial in September, 1994, unless otherwise noted.

**3.** Rule 28.03 was revised, effective July 1, 1995. It now provides that "[n]o party may assign as error the giving or failure to give instructions . . .

"For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice." *State v. Cline*, 808 S.W.2d 822, 824 (Mo. banc 1991). "Manifest injustice or miscarriage of justice" is not an easy phrase to define. "Indeed the cases give the distinct impression that 'plain error' is a concept appellate courts find impossible to define, save they know it when they see it." 3A Charles Alan Wright, *Federal Practice and Procedure*, Sec. 856 (1982). "[W]hether an appellate court should take notice of an error not raised below must be made on the facts of the particular case, and there are no 'hard and fast classifications in either the application of the principle or the use of a descriptive title.' " *Id.*; *accord Cline*, 808 S.W.2d at 824 ("The determination whether plain error exists must be based on a consideration of the facts and circumstances of each case."). In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict.

*Id.* at 103.

Moriarty asserts Instruction No. 10 omitted an "essential element" of the charged offense in that it did not require the jury to find a false certificate was *issued* or *made with the purpose that it be issued;* the language used in § 570.110 and MAI–CR 3d 324.26. She also insists that Instruction No. 10 did not instruct the jury regarding criminal responsibility for the conduct of another person (accessory liability), and was confusing and misleading because it contained "unnecessary words and prepositional phrases, shift[ed] from submitting in the conjunctive to the disjunctive, and refer[ed] to relevant time periods in vague terms."

The State has the burden, and must prove, each and every element of a criminal offense, and if it fails to do so, any conviction obtained must be reversed. *State v. Bromley*, 840 S.W.2d 288, 289 (Mo.App. 1992). Similarly, "[a] verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of offense charged." *State v. Ward*, 745 S.W.2d 666, 670 (Mo. banc 1988). If the evidence presented in a criminal case is insufficient to sustain a conviction, plain error affecting defendant's substantial rights is involved resulting in manifest injustice. *State v. Fosdick*, 776 S.W.2d 54, 56 (Mo.App. 1989). Similarly, if a verdict-directing instruction does not contain, and does not require the jury to find, each element of the offense charged, particularly contested elements, plain error can result. *State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. banc 1995). Thus, Moriarty's first contention, that Instruction No. 10 omitted an essential element of the charged offense, "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,'" *State v. Brown*, 902 S.W.2d at 284, and we therefore exercise our discretion to review for plain error. However, her additional claims, failure to instruct on accessory liability and use of "unnecessary words and prepositional phrases," do not rise to such a level and we decline to review except to the extent necessary for consideration of the main issue.

Moriarty contends she was prejudiced because Instruction No. 10 omitted the conduct element the jury was required to find in order to convict her of the charged offense. Specifically, she asserts the instruction failed to require the jury to find she "issued" a false certificate or "made" the same "with the purpose that it be issued." Moreover, she contends she could not be guilty of the crime of "Issuing a False Instrument or Certificate" because she did not "issue" Tim Moriarty's Declaration of Candidacy. Moriarty's arguments on this point are all derived from her far too constricted interpretation of § 570.110 in general, and in particular her narrow definition of the statutory term "issue".

Moriarty's contention requires us to interpret the provisions of § 570.110. In doing so, we are mindful of several rules of statutory construction. Our primary responsibility is to determine the legislative intent from the statutory language and give effect

to that intent. *Geary v. Missouri State Employees' Retirement Sys.*, 878 S.W.2d 918, 922 (Mo.App.1994). We presume the legislature did not enact a meaningless provision. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). We further presume the legislature intended a "logical, rather than an absurd or unreasonable result." *Davis v. Director of Ins.*, 879 S.W.2d 556, 560 (Mo.App.1994). Therefore, in construing § 570.110:

"We look to the circumstances and usages of the time; we seek to promote the purposes and objects of the statute and to avoid any strained and absurd meaning." *Springfield General Osteopathic Hospital v. Industrial Commission*, 538 S.W.2d 364 (Mo.App.1976). As stated in *State ex rel. Missouri Power and Light Co. v. Riley*, 546 S.W.2d 792 [, 796] (Mo.App.1977), ["The] laws are presumed to have been passed with a view to the welfare of the community." This is not to say the court may capriciously ignore the plain language of the statute "but in determining what the language really means we may consider the entire purpose and policy of the statute and 'the language in the totality of the enactment' and construe it in the light of 'what is below the surface of the words and yet fairly a part of them'." *State ex rel. Henderson v. Proctor*, 361 S.W.2d 802, 805 (Mo. banc 1962).

*State ex rel. Safety Ambulance Serv. v. Kinder*, 557 S.W.2d 242, 247 (Mo. banc 1977). Finally, it is appropriate to construe a statute with reference to its accompanying comments. *State v. Olson*, 636 S.W.2d 318, 321 (Mo. banc 1982).

Section 570.110 provides:

1. A person commits the crime of issuing a false instrument or certificate when, being authorized by law to take proof or acknowledgment of any instrument which by law may be recorded, or being authorized by law to make or issue official certificates or other official written instruments, he issues such an instrument or certificate, or makes the same with the purpose that it be issued, knowing:

(1) That it contains a false statement or false information; or

(2) That it is wholly or partly blank.

2. Issuing a false instrument or certificate is a class A misdemeanor.

As noted, *supra*, in construing a statute, it is appropriate to look to the Committee comments for guidance as to intent. *Id.* In the case of § 570.110, the legislative intent is apparent upon review of the comments, which state:

This section is based on New York Revised Penal Code § 175.40 and §§ 561.060 [RSMo 1969] (False Acknowledgment of a Deed) and 561.220 [RSMo 1969] (Affixing False Jurat). It covers any instrument which, under law, is recordable. It also covers the issuing of any official certificates or other written instruments, e.g. jurats, affidavits, statements. The section covers attesting to false statements or false information, as well as the issuing of instruments which are wholly or partly blank.

*The section is intended to cover all of the conduct currently proscribed under §§ 561.060 and 561.220.* It has the advantage of being much shorter and easier to understand. The mental state required is "knowingly" and the crime has been made a Class A Misdemeanor.[4] (Emphasis added).

Thus, the legislative intent was for § 570.110 to continue to proscribe all conduct previously prohibited by §§ 561.060 and 561.220.[5] Section 561.220 provided, in pertinent part:

1. It shall be unlawful for any officer authorized by law to administer oaths to:

(1) With or without his official seal *to affix his name or permit another to affix his name to any jurat, certificate, attesta-*

---

**4.** Although § 570.110 is based on New York Revised Penal Code § 175.40 (Issuing a False Certificate), it appears the Missouri General Assembly merely copied the short format and language, rather than adopting the criminal conduct it proscribes. A violation of § 175.40 (a class E felo-

ny) requires the "public servant" to act "with intent to defraud, deceive or injure another person" when she issues a false certificate.

**5.** RSMo 1969.

*tion or any writing whatsoever whereby he attests or certifies,* states or appears to state, *that another person took or took and subscribed, a particular oath* or made a particular affidavit, or swore to the truth of a particular statement, affidavit, application, certificate, writing or pleading to be used or filed in any court or before any board, tribunal or officer of this or any other state, or of the United States, *when no such oath was administered by him and taken in his presence.*

(2) With or without his official seal to *affix his name or permit another to affix his name to any* jurat, affidavit, statement, certificate, application, *writing* or pleading *described in subdivision (1) while wholly or partly in blank.*

§ 561.220, RSMo 1969 (emphasis added). From the foregoing, it is apparent that § 570.110 was intended to proscribe such conduct as "affix[ing] his name or permit[ing] another to affix his name, to any writing whatsoever whereby he ... *certifies* ... that another person took or took and subscribed, a particular oath .... when no such oath was administered by him and taken in his presence." § 561.220, RSMo 1969 (emphasis added). Thus, while § 570.110 is phrased in terms of a person committing the crime of issuing a false instrument or certificate when "he *issues* ... an instrument or certificate, ... knowing ... [t]hat it contains a false statement or false information," it clearly equates the word "issues" with the word "certifies," and the latter term, for purposes of the statute, is fairly a part of the former.

■ Moriarty, nevertheless, asserts that the definition of "issue" means placing something in circulation, to send forth, or to emit. She further limits that definition by interpreting the concept to mean the *physical* circulation of an instrument or certificate. She therefore argues that since the Declaration of Candidacy was not circulated, but merely filed in the Elections Division, she could not be guilty of the offense charged. The word "issue" has a wide variety of meanings depending on the context in which it is used, including the definition espoused by Moriarty. However, as evidenced by the preceding discussion of the legislative intent,

as used in § 570.110, the word embodies a broader concept than mere "placing in circulation" or "sending forth." The definition of the word "issue" most applicable to the context in which it is used in the statute is "to send out; **to deliver from authority; as to** ***issue* a writ."** *Webster's New Twentieth Century Dictionary,* 2nd ed., 975 (1979) (emphasis added). The legislature, in using the word "issue" in § 570.110, envisioned it as meaning something more akin to "delivering from authority." The statute contemplates the exercise of authority or the performance of official duties. The word "issue" as used in the statute bears a similar meaning as when used in the context of a court "issuing" a writ. A writ "issues" when a court exercises its authority as a court. The writ is "issued" regardless of whether some physical distribution or circulation of a document occurs. In other words, the court's decree constitutes the "issuance." When the word is viewed in this light, § 570.110 does not require public distribution or circulation of "official certificates or other official written instruments" for them to be issued.

■ Based on the clear intent manifested by the legislature, and our interpretation of the statute, it is apparent that Instruction No. 10 did not omit the essential conduct element required by § 570.110. Paraphrased, the instruction required the jury to find: (a) that Moriarty and her designated employees were authorized to take acknowledgement of Declarations of Candidacy and *"to issue certificates"* to the effect that the candidate appeared, subscribed and swore to the information contained in the form; (b) that Moriarty directed Barbara Campbell *"to certify"* that Tim Moriarty personally appeared on March 29, 1994 and subscribed and swore to the facts contained in his Declaration of Candidacy; (c) that the form was partly blank in that Tim Moriarty had not yet signed it, and contained a false statement in that Tim Moriarty did not appear and subscribe to it on March 29, 1994; (d) and that Moriarty knew that the form contained a false statement. The instruction required the jury to find all essential elements of the offense charged. Consequently, while we do not condone use of non-approved instructions

when an MAI–CR instruction is applicable, our plain error review compels the conclusion that a manifest injustice or miscarriage of justice has not resulted from the giving of Instruction No. 10.

For her second principal point of error, Moriarty contends the trial court erred in submitting Count III to the jury and entering judgment against her for issuing a false certificate. She alleges there was not sufficient evidence from which the jury could have found beyond a reasonable doubt that she issued a false certificate or made the same with the purpose that it be issued. Our standard of review of the sufficiency of evidence to support a criminal conviction was set forth by the Missouri Supreme Court in *State v. Dulany,* 781 S.W.2d 52 (Mo. banc 1989).

> On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.

*Id.* at 55 (citations omitted). Based on the recitation of the evidence set forth earlier and our construction of § 570.110, there is ample evidence in the record to support the verdict and we need not lengthen this opinion by recounting it again. Point denied.

The judgment is affirmed.

All concur.