**STATE of Missouri, Respondent,**

v.

**Michael CURRY, Jr., Appellant.**

**No. ED 95442.**

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 24, 2012.

Nadine V. Nunn, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Mary H. Moore, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, J.

## I.  Facts and Procedural History

Appellant Michael Curry, Jr. ("Curry") was charged with one count of class D felony aggravated stalking.[1] The information charged that between 21 September 2009 and 2 October 2009, Curry "purposely harassed D.W. by calling her employer and going to her place of employment," and these acts violated an order of protection of which Curry had notice. Curry was also charged with one count of misdemeanor violation of a protection order.[2] The information charged that this violation occurred on or about 30 September 2009.

The evidence at trial showed that Curry and D.W. lived together for nearly five years and had three children together. On 14 September 2009, the circuit court granted an Order of Protection for D.W. against Curry based on an incident of domestic violence, and Curry was properly served with a copy of the order on 16 September 2009. This order prohibited Curry from abusing, threatening to abuse, stalking, or disturbing the peace of D.W. It also prohibited Curry from communicating with D.W. in any manner or through any medium.

---

1.  MO. REV. STAT. § 565.225.3 (2006).      2.  § 455.085.

D.W. is employed as a school bus driver for Atlantic Express. John Jones, D.W.'s co-worker and dispatcher, testified that on 21 September 2009, a man identifying himself as D.W.'s "baby-daddy" called Atlantic Express trying to speak with D.W. Jones testified that the man sounded upset and angry. The policy at Atlantic Express is to not allow employees to have personal phone calls unless there is an emergency. The man stated that D.W.'s child was missing, even though all D.W.'s children were at D.W.'s grandmother's house. Jones testified that on a separate occasion, he noticed Curry in the employee parking lot getting ready to take D.W.'s truck. Jones left to notify D.W. and when he returned, the truck was gone.

Dwan Colyer, a fellow driver at Atlantic Express, also testified at trial. He testified that he answered the phone on 30 September 2009. A caller identifying himself and D.W's "baby daddy, Mike" stated that he was going to kill D.W. and the children on the bus she was driving.

Domestic abuse detective Denise Strittmatter also testified at trial. Detective Strittmatter testified that she met with D.W. on 1 October 2009 at the police station. D.W. sought a restraining order because Curry had previously assaulted her, and she was afraid for both her safety and her children's safety. Detective Strittmatter also read the allegations contained in application for the Order of Protection. The application stated that Curry slapped, choked, and threatened to beat up and kill D.W.

On 17 June 2010, the jury convicted Curry of one count of aggravated stalking and one count of violating a protection order. The circuit court sentenced Curry to four (4) years in prison for the aggravated stalking conviction, suspended the sentence and placed him on four (4) years probation. Additionally, the circuit court sentenced Curry to one (1) year in prison for violating the protective order, suspended the sentence, and placed him on two (2) years probation. Aggrieved, Curry now appeals. Additional facts, as needed, are provided in the discussion section.

## II. Discussion

Curry raises four cognizable points on appeal.[3] He first argues that the trial plainly erred in overruling a motion to dismiss filed prior to trial. Second, he claims that the State produced insufficient evidence to sustain the convictions for aggravated stalking and violation of a protection order. Third, he argues that the trial court erred in refusing to allow D.W. to testify that she no longer believed Curry had committed the crimes, and in refusing to allow evidence that the protection order had been dismissed before trial. Fourth, he argues that the trial court erred in answering a question posed by the jury about one of the instructions. For the following reasons, each of Curry's points lack merit, and the verdict and sentence of the trial court is affirmed.

### A. Motion to Dismiss

■ In Curry's first point on appeal, he argues that the trial court erred in denying a motion to dismiss filed prior to trial. Curry rests his argument on the fact that D.W. notified the prosecuting attorney that she "found out someone else was responsible for the crime," and she sent letters to State asking that all charges against Curry be dismissed. Curry acknowledges that he did not raise this issue in his motion for a new trial, therefore we review, if at all, for plain error. Under

3. Curry raises seven actual points on appeal, but there is significant overlap among several of them. We only consider four points to avoid needless repetition.

plain error, Curry bears the burden of showing that there is an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage or justice." *State v. Roper,* 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

Curry cites no authority to support his conclusion that the trial court should have dismissed the case on grounds that D.W. changed her mind and did not want Curry prosecuted. Inexplicably, the only case cited under this point, *State v. Banks,* 215 S.W.3d 118 (Mo. banc 2007), deals with improper comments made by a prosecutor during closing arguments. Because Curry's argument is not readily discernible or supported, we cannot say the trial court plainly erred in denying the motion to dismiss.

### B. Sufficiency of the Evidence

In Curry's second point on appeal, he argues that the State did not produce sufficient evidence to support the convictions for aggravated stalking and violation of a protection order. The Missouri Supreme Court recently reaffirmed the following standard of review for challenges to the sufficiency of the evidence:

> Generally, this Court's review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt. This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder "could have found the essential elements of the crime beyond a reasonable doubt. In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favor-

able inferences drawn from the evidence. All evidence and inferences to the contrary are disregarded. When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact. This Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.

*State v. Nash,* 339 S.W.3d 500, 508–09 (Mo. banc 2011) (internal citations omitted).

### i. Aggravated Stalking

■ "A person commits the crime of aggravated stalking if he or she purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person, and ... [m]akes a credible threat; or ... [a]t least one of the acts constituting the course of conduct is in violation of an order of protection and the person has received actual notice of such order. § 565.225.3(1)–(2). A person *harasses* another if he "engage[s] in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed." § 565.225.1(3) (emphasis added).

John Jones testified D.W. informed him that she was having problems with Curry. Jones testified that a man identifying himself as her "baby's daddy" called Atlantic Express on 21 September 2009, sounding angry and upset, seeking to talk to D.W. and stating that one of her children were missing. He also testified that he saw Curry attempting to take D.W.'s truck from the employee parking law.

Dwan Colyer testified that he answered the phone at work on 30 September 2009.

The caller identified himself as D.W.'s "baby-daddy, Mike" and stated that he was going to kill D.W. and the children on the bus.

Detective Denise Strittmatter testified that she met with D.W. on 1 October 2009 at the police station. D.W. sought a restraining order because she had been previously assaulted by Curry and she was afraid for both her safety and her children's safety. Detective Strittmatter also read the allegations contained in application for the Order of Protection. The application stated that Curry slapped, choked, and threatened to beat up and kill D.W.

The evidence stated above is more than sufficient for a reasonable juror to conclude that Curry acted in a manner that would reasonably cause D.W. to be frightened, intimidated or emotionally disturbed. Given Curry's past history of abusive behavior as evidenced by the statements on the application for the order of protection, Curry's threats were clearly credible. Finally, this type of behavior was specifically prohibited by the order of protection. Therefore, this claim is without merit.

### ii. Violation of a Protection Order

■ A person commits the class A misdemeanor of violating an order of protection if he or she violates "terms and conditions, with regard to abuse, stalking ... communication initiated by the respondent." § 455.085.8. The terms of the order of protection forbid Curry from stalking D.W. or initiating any contact with D.W. in any manner or through any medium.

The information alleged that Curry violated this statute on or about 20 September 2011, the day Colyer received the call at work. Colyer's testimony, as summarized above, is sufficient from which a reasonable juror could have concluded that Curry attempted to communicate with D.W. while she was at work, and that she threatened D.W.'s life. This is a clear violation of the order of protection, thus Curry's claim is without merit.

The State presented sufficient evidence to support both the conviction for aggravated stalking and violation of an order of protection. Therefore, point two is denied.

### C. Admission of Evidence

In Curry's third point on appeal he argues that the trial court erred in refusing to allow D.W. to testify that she no longer believed Curry had committed the crimes, and in refusing to allow evidence that the protection order had been dismissed before trial. Curry did not raise these claim in his motion for a new trial, therefore we review, if at all, for plain error. Under plain error, Curry bears of the burden of showing that there is an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage or justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

■ Curry is essentially arguing that the trial court erred in the excluding evidence. The trial court has broad discretion to determine the admissibility of evidence, and we will not reverse the court's ruling absent an abuse of discretion. *State v. Mozee*, 112 S.W.3d 102, 105 (Mo.App. W.D.2003). The trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *State v. McGowan*, 184 S.W.3d 607, 610 (Mo.App. E.D.2006). We review the trial court's admission or exclusion of evidence for prejudice and not mere error, and will affirm the court's ruling unless it was so prejudicial that it deprived the defendant of a fair trial. *Mozee*, 112 S.W.3d at 105.

■ The first type of evidence that Curry complains was improperly excluded was testimony by D.W. that she knew another person had committed the offenses. We do not typically review excluded evidence unless a specific and definite offer of proof has been made at trial. *State v. Hirt*, 16 S.W.3d 628, 633 (Mo.App. W.D. 2000). The offer of proof must show "(1) what evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." *State v. Tisius*, 92 S.W.3d 751, 767 (Mo. banc 2002).

A formal offer of proof was not presented to the trial court. But a review of the record shows that defense counsel was attempting to allow D.W. to testify that she suspected someone other than Curry made the phone calls to her work which Jones and Colyer recounted. However, "[a] witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that a witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." [4]

From defense counsel's statements at the bench, it appears that D .W.'s testimony would have been pure speculation and not based on personal knowledge, especially given that she did not actually answer the calls at work or ever hear the caller's voice. Therefore, even if we overlook the lack of formal offer of proof, we still should not say that trial court plainly erred in excluding D.W's testimony because defense counsel did not meet the requirements for admissibility.

■ Curry also argues that the trial court erred in refusing to admit evidence that the order of protection had been dismissed by December 2009. To be admissible, evidence must be logically and legally relevant. *Guess v. Escobar*, 26 S.W.3d 235, 242 (Mo.App. W.D.2000). Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborates other evidence. *Id.* "Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence)." *Id.*

All the charges against Curry were alleged to have occurred in either September or October 2009. That the order of protection was dismissed by December 2009 has no legal relevance as to whether he violated the order in September or October. As such, the trial court did not abuse its discretion in refusing to admit this evidence.

### D. Response to Jury's Question

■ In Curry's final point on appeal, he claims that the trial court erred in its response to a question asked by the jury during deliberations, but he is also claiming error in the form of Instruction Number 5. Curry did not object to the form of the instruction, he did not object at trial to the court's response the jury's question, and he did not raise any form of this argument is his motion for a new trial. As such, the claim is wholly unpreserved.

Based on the foregoing, each of Curry's claim are either unpreserved or without merit. Therefore, the verdict and sentence of the trial court should be affirmed.

KATHIANNE KNAUP CRANE, P.J. and ROBERT M. CLAYTON, III, J., concur.

---

4. This language, borrowed from Federal Rule of Evidence 602, is equally applicable here.