The State charged Lazinger with two counts of aggravated stalking in violation of section 565.225.3.[3] Count I of the First Amended Information alleged that:
between July 31, 2014, and April 23, 2015, ... [Lazinger], through her course of conduct, repeatedly and purposely harassed M.L. by contacting M.L.'s child, S.L. on or about September 2, 2014, by telephone, and by attending S.L.'s lacrosse practice on or about April 22, 2015, and thereby would have caused a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed, and the defendant previously has pleaded guilty to a violation of stalking involving M.L. under section 565.225, RSMo...
Count II of the First Amended Information alleged identical facts, except that S.L. was Lazinger's target of stalking.[4]
After a trial on August 15, 2017, the jury found Lazinger guilty on both counts. The trial court sentenced Lazinger to seven years imprisonment on both counts, to be served consecutively.
Lazinger appeals.
Standard of Review
" 'Appellate review of sufficiency of the evidence is limited to whether the state has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt.' " State v. Graham , 553 S.W.3d 411, 417 (Mo. App. W.D. 2018) (quoting State v. Steidley , 533 S.W.3d 762, 768 (Mo. App. W.D. 2017) ). "In reviewing the evidence, this Court 'considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences.' " State v. Sigmon , 517 S.W.3d 653, 658 (Mo. App. E.D. 2017) (quoting State v. Lammers , 479 S.W.3d 624, 632 (Mo. banc 2016) ). We disregard any evidence and inferences that are contrary to the verdict. Graham , 553 S.W.3d at 417.
We review the trial court's decisions regarding admission of evidence for an abuse of discretion. State v. Joyner , 458 S.W.3d 875, 880 (Mo. App. W.D. 2015). "The trial court abuses its discretion if its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. (citing State v. Marquis , 446 S.W.3d 311, 317 (Mo. App. W.D. 2014) ).
*224 "We review the trial court's admission or exclusion of evidence for prejudice and not mere error, and will affirm the court's ruling unless it was so prejudicial that it deprived the defendant of a fair trial." State v. Curry , 357 S.W.3d 259, 264 (Mo. App. E.D. 2012).
Analysis
Lazinger raises two points on appeal. Her first point argues the trial court erred in overruling her motion for acquittal at the close of the evidence because there was insufficient evidence to support the essential elements of aggravated stalking as alleged in Count I of the First Amended Information. Lazinger's second point asserts the trial court erred in overruling her objection to the admission of testimony about S.L.'s and M.L.'s subjective feelings regarding Lazinger's prior uncharged acts. Lazinger argues the admission of this testimony prejudicially evoked the sympathies of the jury, while also misleading and confusing the jury, resulting in her conviction on both Counts I and II of the First Amended Information. We address each point in turn.
Point One
Lazinger's first point on appeal argues that the trial court erred in overruling her motion for judgment of acquittal because the State failed to present sufficient evidence to support her conviction on Count I. Lazinger argues the State failed to present sufficient evidence to permit a reasonable juror to conclude that Lazinger "purposely, through [ ] her course of conduct, harass[ed]" M.L. when she went to S.L.'s lacrosse practice. Lazinger further asserts that a course of conduct was not sufficiently established because Lazinger did not "purposely harass" M.L. by attempting to visit S.L. at his lacrosse practice, and the State relied on only the lacrosse practice incident and the September 2, 2014 phone call to S.L. to establish a course of conduct.
A person commits the offense of stalking if she "purposely, through [ ] her course of conduct, harasses or follows with the intent of harassing another person." Section 565.225.2. "The offense is elevated to aggravated stalking if, in committing the offense of stalking, a person's course of conduct includes one of five statutory aggravators." Graham , 553 S.W.3d at 417. Those five statutory aggravators are provided in section 565.225.3:
A person commits the crime of aggravated stalking if he or she purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person, and:
(1) Makes a credible threat; or
(2) At least one of the acts constituting the course of conduct is in violation of an order of protection and the person has received actual notice of such order; or
(3) At least one of the actions constituting the course of conduct is in violation of a condition of probation, parole, pretrial release, or release on bond pending appeal; or
(4) At any time during the course of conduct, the other person is seventeen years of age or younger and the person harassing the other person is twenty-one years of age or older; or
(5) He or she has previously pleaded guilty to or been found guilty of domestic assault, violation of an order of protection, or any other crime where the other person was the victim.
Count I of the First Amended Information alleged that Lazinger committed aggravated stalking because she harassed M.L. with a course of conduct and had "previously pleaded guilty to a violation of stalking involving M.L." Count I thus relied on *225 565.225.3(5) as the statutory basis for aggravated stalking because 565.225.3(5) permits elevation of stalking to aggravated stalking if a defendant "has previously pleaded guilty to ... any other crime where the other person was the victim."
Consequently, to prove that Lazinger committed aggravated stalking, the State was required to establish three elements: (1) Lazinger, through a course of conduct; (2) purposely harassed M.L.;[5] and (3) Lazinger previously pleaded guilty to "any other crime where [M.L.] was the victim." Lazinger challenges the sufficiency of the evidence to establish the first and second elements of aggravated stalking as charged in Count I.[6] The essence of Lazinger's complaint is that her contact with S.L. at lacrosse practice did not purposely harass M.L., and thus cannot be used to establish a course of conduct.[7]
Section 565.225.1(3) defines "harass" as "to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed." "A person 'acts purposely,' or with purpose, with respect to [her] conduct or to a result thereof when it is [her] conscious object to engage in that conduct or to cause that result." Section 562.016.2. To establish the second element of aggravated stalking, the State was required to provide evidence that would permit a reasonable inference that it was Lazinger's "conscious object" when she visited S.L. during his lacrosse practice to harass M.L.
Lazinger testified at trial that she was aware that an order of protection prohibited any contact with S.L. and M.L. Despite knowing that she was not permitted to contact S.L., she did so anyway by calling him on September 2, 2014. Lazinger testified that she "didn't care about M.L." when she made the call and threatened to "come back to Columbia and cause another scene similar to the car incident in 2013." At trial, she further testified that "I know I can't talk to [S.L.] because [M.L.] has [our children] brainwashed." She also testified that while she made numerous attempts to convince S.L. to move back with her to Maryland, S.L. refused her invitation. Lazinger also testified that the last time S.L. had seen her in person was during an incident in June 2013 when Lazinger drove her car into M.L.'s mailbox and damaged two vehicles, one of which was S.L.'s. When asked whether Lazinger understood why S.L. would be afraid of *226 her, she testified that "I understand that M.L. has [the children] brainwashed."
Lazinger's testimony demonstrates she knew that her communications with S.L. had been ill-received during past encounters. Lazinger described S.L. as "brainwashed" by M.L. A jury could reasonably infer that Lazinger would have known that continued attempts to contact S.L. would be relayed to M.L., and that M.L., who had obtained an order of protection against Lazinger on behalf of S.L., would be disturbed by those attempts. Lazinger's admission that she did not care how her September 2014 call was received by M.L. is particularly insightful. It was during that phone call that Lazinger threatened to return to Columbia and cause another "scene" like the one in 2013 -- the very incident that prompted M.L. to obtain an order of protection to begin with. Thus, it is reasonable to infer from Lazinger's acknowledgment of the damaged relationship with S.L., and her belief that S.L. was brainwashed by M.L., that Lazinger knew S.L. would relay to M.L. any of Lazinger's communications, or attempts to communicate. This inference would permit a reasonable juror to conclude that when Lazinger went to S.L.'s lacrosse practice, she did so with the "conscious object" to engage in "harassing conduct," in that her conduct "served no legitimate purpose," but to "frighten, intimidate, or emotionally distress" M.L., by yet again showing up unannounced in violation of an order of protection. It is well-settled law that harassment for the purposes of section 565.225 may be accomplished through an intermediary. See Graham , 553 S.W.3d at 421 (Mo. App. W.D. 2018) (holding that a defendant's threatening text to a victim's adult child was sufficient evidence to permit a rational fact-finder to conclude that the defendant's "conscious object" in sending the text was to harass the victim.); see also State v. Curry , 357 S.W.3d 259, 263-64 (Mo. App. E.D. 2012) ; State v. Starkey , 380 S.W.3d 636, 644-45 (Mo. App. E.D. 2012) ; State v. Bernhardt , 338 S.W.3d 830, 834-36 (Mo. App. E.D. 2011) ; State v. Lasley , 130 S.W.3d 15, 17 (Mo. App. E.D. 2004).
If that were not enough, Lazinger was found leaving S.L.'s lacrosse practice with a "large stick" and the prescription information for S.L., Lazinger's and M.L.'s youngest child, and one of M.L.'s other children from his remarriage. It is reasonable to infer that Lazinger's intentions during the April 22, 2015 incident were not merely to observe S.L.'s lacrosse practice, or contact her youngest son, but were intended to harass M.L., as the evidence established that Lazinger had previously threatened to take M.L.'s children from him.
Lazinger concedes that sufficient evidence was adduced by the State to permit a reasonable inference that her September 2, 2014 phone call to S.L. was directed to M.L. (Appellant's Brief p. 20). Lazinger's concession, considered alongside our discussion, supra , regarding S.L.'s lacrosse practice incident on April 22, 2015, establish that Lazinger acted through a "course of conduct," composed of two of more acts of purposeful harassment. Section 565.225.1(1).
The trial court did not err when it overruled Lazinger's motion for judgment of acquittal at the close of all the evidence as to Count I.
Point one is denied.
Point Two
Lazinger's second point on appeal argues that the trial court abused its discretion in allowing M.L. and S.L. to testify regarding their subjective feelings about Lazinger's conduct during 2013 when on one occasion she visited M.L.'s house unannounced, rang the doorbell and sat on *227 the porch, and on a second occasion ran over M.L.'s mailbox and hit two vehicles with her vehicle. Lazinger asserts that this testimony was not legally or logically relevant because a finding of guilty for the offense of aggravated stalking does not depend on a victim's subjective feelings, but requires a finding that the harassment would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed.
Prior to 2008, section 565.225.1(3) required the State to prove that a defendant's course of conduct "harassed" a victim because it "actually cause[ed] substantial emotional distress" to the victim. A 2008 amendment to section 565.225.1(3) modified this essential element. The version of section 565.225.1(3) applicable to Lazinger's offenses defines "harass" as "to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed." As such, the evidence had to permit the jury to draw the reasonable inference that Lazinger's course of conduct would cause fright, intimidation, or emotional distress on an objective, and not a subjective, standard.
The issue framed by Lazinger's second point on appeal is whether in light of this change to section 565.225.1(3), evidence of the subjective fright, intimidation, or emotional distress she caused M.L. and S.L. in 2013 can be relevant to establish that her course of conduct in 2014 and 2015 would cause a reasonable person to be frightened, intimidated, or emotionally distressed. The State argued at trial, in response to Lazinger's efforts to exclude testimony from M.L. and S.L. about their subjective fears in 2013, that said evidence was relevant to show that a reasonable person would be frightened in response to Lazinger's course of conduct in 2014 and 2015. The trial court agreed with the State. This was not an abuse of discretion.
"Evidence is admissible if it is logically and legally relevant." State v. Crow , 63 S.W.3d 270, 274 (Mo. App. W.D. 2001). "To be logically relevant evidence must tend to prove or disprove a fact in issue." Id. Legally relevant evidence is evidence that has a probative value that outweighs its prejudicial effect, or its tendency to confuse the issues, mislead the jury, unduly delay, waste time, or provide cumulative evidence. Joyner , 458 S.W.3d at 887-88 n.13.
Here, the course of conduct in question involved Lazinger's 2014 telephone call to S.L., and her 2015 appearance at S.L.'s lacrosse practice. At trial, M.L. and S.L. testified they felt frightened by Lazinger's "irrational" behavior during the two incidents in 2013. This evidence was both logically and legally relevant to whether a "reasonable person" would feel frightened or intimidated by Lazinger's course of conduct in 2014 and 2015, particularly given evidence that Lazinger was aware of the effect of her 2013 conduct on M.L. and S.L. Lazinger testified that she thought her children had been "brainwashed" by M.L. and that she could not "talk" with S.L. because of the alleged "brainwashing." This testimony, coupled with M.L.'s and S.L.'s testimony that Lazinger's 2013 conduct caused them to be frightened, is probative of whether Lazinger acted with purpose to harass in 2014 and 2015 because she knew S.L. and M.L. were frightened of her. "In the face of such evidence, a jury can infer intent-that is purpose to harass through a course of conduct-because [Lazinger] [was] aware that [ ] her course of conduct [would] be perceived with heightened sensitivity in light of the victim's" posture of fear. Id. at 888.
*228 Ironically, Lazinger relies on Joyner to argue that any testimony regarding M.L.'s or S.L.'s subjective feelings was logically irrelevant as a matter of law, and was legally irrelevant because it was likely to confuse the jury regarding the State's burden to demonstrate that a reasonable person under the circumstances would have been frightened, intimidated, or emotionally distressed. Lazinger's reliance on Joyner is unavailing.
Joyner held that a trial court abused its discretion by admitting a victim's testimony that the victim knew of the defendant's registered sex offender status. Id. at 889. The trial court admitted the testimony under an exception to the general rule against the admission of prior uncharged conduct thereby divulging to the jury the defendant's sexual offender status. Id. at 880-81. We held in Joyner that admission of the testimony would only be relevant had the defendant known that the victim was aware of the defendant's status prior to when the defendant engaged in his alleged stalking conduct. Id. at 889. We held that only then could the probative value of the testimony of the victim's knowledge of the defendant's status outweigh its prejudicial effect because it could have demonstrated the purposefulness of the defendant's conduct. Id.
Lazinger does not argue that testimony of Lazinger's conduct during 2013 was erroneously admitted as prior uncharged conduct. Lazinger's own testimony admitted to the 2013 conduct. Instead, Lazinger asserts that M.L.'s and S.L.'s testimony evincing their fear of Lazinger in response to her 2013 conduct was error on the issue of how a reasonable person would react to a later, charged course of conduct. Joyner did not address this issue.
The State was required to prove that a reasonable person would have been frightened under the circumstances of Lazinger's alleged stalking when she telephoned S.L. in September 2014 and visited S.L.'s lacrosse practice in April 2015. Relevant to that inquiry is whether Lazinger's prior conduct had given S.L. and M.L. any reason to be afraid, so that subsequent contact would evoke fear. It was both logically and legally relevant when M.L. and S.L. testified that Lazinger's prior conduct had caused them to be afraid of her because it was probative of whether a reasonable person would have been frightened. Had Lazinger's 2013 conduct not disturbed M.L. and S.L. then it would seemingly be unreasonable for them to be frightened by her phone call in September 2014 and her visit to S.L.'s lacrosse practice in 2015. Moreover, the evidence of M.L. and S.L.'s reactions supported the reasonable inference that Lazinger was aware that her conduct in 2013 had frightened M.L. and S.L., since M.L. obtained an order of protection based on that conduct, and Lazinger herself acknowledged that she could not talk to S.L. because of M.L.'s purported "brainwashing."
Because the testimony of M.L. and S.L.'s subjective feelings in reaction to Lazinger's 2013 conduct was probative of how a reasonable person would react to Lazinger's course of conduct in 2014 and 2015, the trial court did not abuse its discretion by admitting the testimony.
Lazinger's second point is denied.
Conclusion
The trial court's judgment is affirmed.
All concur

All statutory references are to RSMo 2000, as supplemented through the date of the offense on April 22, 2015, unless otherwise indicated.

Count II of the First Amended Information additionally alleged that Lazinger's conduct violated a "condition of probation which demanded defendant have no contact with M.L. and M.L.'s children, as ordered ... on July 23, 2014."

This Court has held that "purposely" modifies "harass[ ]" under the stalking provisions of section 565.225. See Joyner , 458 S.W.3d at 884-85. While Joyner discussed the stalking provision under section 565.225.2, the aggravated stalking provision of 565.225.3 is substantially identical for purposes of the present analysis.

Lazinger stipulated to previously pleading guilty to a stalking conviction involving M.L. in 2014, and does not challenge the sufficiency of the evidence in relation to this element of aggravated stalking.

Lazinger's essential argument is that insufficient evidence demonstrates that her attendance at S.L.'s lacrosse practice was "directed to" M.L. because M.L. was not at the lacrosse practice. Lazinger's argument follows that because insufficient evidence was adduced to establish her purposeful harassment of M.L. during the lacrosse practice incident, a "course of conduct" was not established. A course of conduct is composed of two or more acts. Section 565.225.1(1). The State relied on only two incidents to compose Lazinger's "course of conduct": (1) the September 2, 2014 phone call to S.L., and (2) the April 22, 2015 lacrosse practice incident. Thus, under Lazinger's theory, if the State failed to sufficiently establish evidence that Lazinger purposely harassed M.L. during the lacrosse practice incident, then only one incident of harassment directed to M.L. was sufficiently supported by the State's evidence.