

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD81191** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **April 2, 2019** |
| **RICHARD LOWELL BJORGO,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Clay County, Missouri
The Honorable Shane T. Alexander, Judge**

**Before Division Four:** Karen King Mitchell, Chief Judge, and
Alok Ahuja and Thomas N. Chapman, Judges

Richard Bjorgo appeals, following a jury trial, his convictions of attempted sexual abuse in the first degree, §§ 566.100 and 564.011,[1] and armed criminal action, § 571.015, for which he was sentenced, as a persistent offender, to consecutive terms of fifteen and one hundred years' imprisonment, respectively.[2] Bjorgo raises three claims on appeal. The first challenges the sufficiency of the evidence to support his convictions for attempted sexual abuse and its

---

[1] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2014 Supplement.

[2] Bjorgo was also convicted of first-degree assault, § 565.050, and another count of armed criminal action, § 571.015, for which he was sentenced to consecutive terms of life and fifteen years' imprisonment, respectively, but neither of those convictions are challenged in this appeal. As such, they will be discussed only to the extent necessary to resolve the claims he has raised.

corresponding conviction of armed criminal action. The second challenges the verdict director for attempted sexual abuse, alleging that it omitted a necessary element. And the third argues that the written judgment fails to accurately reflect the oral pronouncement of Bjorgo's sentence—an error the State concedes. As the only point with merit is Bjorgo's third point on appeal, we remand for the limited purpose of directing the trial court to enter a new judgment that properly reflects the oral pronouncement of Bjorgo's sentence. In all other respects, the judgment is affirmed.

## Background[3]

Around six o'clock in the evening of May 4, 2015, Spencer Smith (pastor of First United Methodist Church in Kearney, Missouri) met with six other church members, including Victim, to interview candidates for the position of worship leader in the church. The interview took place in the church sanctuary. During a break in the interview, Victim left the sanctuary to use the women's restroom located in the lobby attached to the sanctuary.

When Victim entered the restroom, she went into and used the first stall; it did not appear that anyone else was in the restroom at the time. When she exited the stall, however, she saw a man later identified as Bjorgo standing outside the stall.[4] Victim did not know Bjorgo and had not heard or seen him enter the restroom. Bjorgo stepped toward Victim and put his hands on her shoulders and neck. Victim initially thought someone was playing a joke on her but quickly realized she was, in fact, in a dangerous situation. The two began to struggle, and Bjorgo gained control over Victim and pushed her into the larger accessible stall at the rear of the restroom.

---

[3] "Appellate review of sufficiency of the evidence is limited to whether the state has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Lazinger*, 565 S.W.3d 220, 223 (Mo. App. W.D. 2018) (quoting *State v. Graham*, 553 S.W.3d 411, 417 (Mo. App. W.D. 2018). "In reviewing the evidence, this Court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences." *Id*. (internal quotations omitted). "We disregard any evidence and inferences that are contrary to the verdict." *Id*.

[4] Despite the fact that it had been raining heavily most of the evening, when Victim encountered Bjorgo, his clothing was dry and he did not appear to have an umbrella with him.

Victim continued to struggle, but Bjorgo pushed her to the floor, where he straddled her while she was on her back, blocking the stall exit. Bjorgo pulled a knife from his pocket and extended the blade. Victim continued screaming and began kicking her legs and swinging her arms, while Bjorgo tried to stab her in the stomach and slashed at her neck and arms. Bjorgo repeatedly told Victim to "shut the fuck up" and "shut the fuck up, bitch," but he said it in a calm way that troubled Victim even more. Victim continued to resist and fight back, and eventually, Bjorgo stood up and began to leave the restroom. As Bjorgo did so, Victim crawled behind him in hopes of shouting out the door when he opened it, so that someone would hear and come to her aid. Victim was able to get to her feet just before Bjorgo reached the door, but, at that point, he turned and saw her standing and came after her again. The two struggled again, and Bjorgo threw Victim to the ground. Victim kicked at Bjorgo's stomach and groin, at which point, he stood back up and then kicked Victim hard twice in the head before walking out of the restroom.

After Bjorgo left, Victim ran back to the sanctuary. When Victim reentered the sanctuary, she was screaming and hysterical, repeating, "he's at the door." The pastor and two other men went to the exterior doors of the church, where they saw a dome light turn on inside an unfamiliar car in the parking lot. The men ran to the car and tried to get the occupant out. But the occupant, later identified as Bjorgo, started the car, put it in reverse, and quickly drove away toward a nearby highway.

One of the church members that pursued Bjorgo on foot was able to follow him by car while contacting 9-1-1. The church member pursued Bjorgo's car for several minutes until the Kearney Police arrived and took over the pursuit. The police pursued Bjorgo, with lights and sirens on, for several minutes before he eventually stopped. After Bjorgo stopped, the police

3

took him into custody. During a search incident to arrest, officers found a pocket knife in the left front pocket of Bjorgo's pants.

Following Bjorgo's apprehension, officers went to the church to speak with Victim. When they arrived, Victim was crying and very distraught, and she had visible injuries to her neck, hands, wrists, earlobe, foot, hip, head, and elbow. Victim was shown a picture of Bjorgo taken upon his apprehension, and Victim immediately said, "yep, yep, that's him," and resumed crying.

Once in custody, Bjorgo waived his rights and agreed to answer questions. During the interview, Bjorgo initially denied being at the church, but, after being confronted with evidence, Bjorgo admitted he had been there, hiding behind the women's restroom door. Bjorgo described the knife he used during the attack, and he admitted that his intent was to see and touch Victim's breasts. Bjorgo also wrote an apology letter to Victim, which stated:

> Dear Ma'am, I'm sorry for what happened tonight. This is not the real me. I am very self-conscious about my weight. It also causes physical problems. So I smoked some methamphetamine to help lose weight. For some reason, the drug have [sic] an adverse effect on me and cause[s] me to want to touch a woman. I am so sorry that my stupidity of turning to drugs caused me to traumatize you and cause you pain. I am a very nice person when I'm not on drugs. I am not making excuses. I am responsible for my actions, and I sincerely want to apologize for everything you suffered through. Again, I am so sorry for what I did. I truly hope you can find it in your heart to accept my apologies. . . . [T]hank you.[5]

Bjorgo was charged, as a persistent felony offender, with first-degree assault, attempted first-degree sexual abuse (based on his statement during the interview that he intended to touch Victim's breasts during the assault), and two corresponding counts of armed criminal action.

---

[5] Although Bjorgo's letter indicated he had been high on methamphetamine during the attack, several officers who were familiar with the appearance of a person high on methamphetamine testified that Bjorgo did not exhibit any behaviors they would have expected to see from someone in that state. Furthermore, there were no drugs or paraphernalia found on either Bjorgo's person or in his car.

During trial, the jury was given the following verdict director for attempted first-degree sexual abuse:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
> > First, that on or about May 4, 2015, in the County of Clay, State of Missouri, the defendant with the intent to touch the breasts of [Victim], assaulted [Victim] in the women's restroom while displaying a sharp instrument in a threatening manner, and
> >
> > Second, that such conduct was a substantial step toward the commission of the offense of sexual abuse in the first degree of [Victim] at 1000 E. Highway 92, Kearney, Clay County, Missouri, and
> >
> > Third, that defendant engaged in such conduct for the purpose of committing such sexual abuse in the first degree,
>
> then you will find the defendant guilty under Count III of an attempt to commit sexual abuse in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> A person commits the crime of sexual abuse in the first degree when first, he has sexual contact with [Victim] by touching the breast of [Victim] through the clothing, and second, he does so for the purpose of gratifying his own sexual desire, and third, he does so by use of forcible compulsion, and fourth, in regards to the facts and circumstances submitted in this instruction he acted knowingly, and fifth, . . . in the course of this conduct he displays a dangerous instrument in a threatening manner.
>
> As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of sexual abuse in the first degree.

The jury found Bjorgo guilty as charged, and the court sentenced him, as a persistent offender to consecutive terms of life imprisonment for assault, fifteen years' imprisonment for attempted

5

sexual abuse, and one hundred years' imprisonment for each armed criminal action count.[6] Bjorgo appeals.

## Analysis

Bjorgo raises three points on appeal; first, he challenges the sufficiency of the evidence to support his convictions of attempted sexual abuse and its corresponding count of armed criminal action; second, he challenges the verdict director for attempted sexual abuse, alleging that it failed to include a disputed element; and third, he argues that the written judgment does not reflect the oral pronouncement of his sentence for first-degree assault.

### A. The evidence was sufficient to support the verdicts for attempted sexual abuse and armed criminal action.

"To determine whether the evidence is sufficient to support the conviction, 'we must look to the elements of the crime and consider each in turn to determine whether a reasonable [factfinder] could find each of the elements beyond a reasonable doubt.'" *State v. Barac*, 558 S.W.3d 126, 129 (Mo. App. W.D. 2018) (quoting *State v. Sutton*, 427 S.W.3d 359, 360 (Mo. App. W.D. 2014)). In doing so "we are required to take the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence, disregarding all contrary inferences." *Id.* (quoting *Sutton*, 427 S.W.3d at 360).

"A person commits the offense of sexual abuse in the first degree if he . . . subjects another person to sexual contact . . . by the use of forcible compulsion." § 566.100.1. "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." § 566.010(3). "Forcible compulsion" includes "[a] threat, express or implied, that places a person in reasonable

---

[6] During sentencing, it was revealed that Bjorgo had prior convictions for assaulting other women in restrooms in a similar manner on two previous occasions.

fear of death, serious physical injury or kidnapping of such person or another person."
§ 556.061(12)(b).

Here, Bjorgo was charged with *attempted* first-degree sexual abuse. "A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step toward the commission of the offense." § 564.011.1. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.* "The facts of each particular case dictate which acts or conduct will constitute a substantial step." *State v. Bonich*, 289 S.W.3d 767, 771 (Mo. App. S.D. 2009). In this case, the State alleged that, "with the intent to touch [Victim's] breasts, [Bjorgo] assaulted [Victim] in the women's restroom while displaying a sharp instrument in a threatening manner, and such conduct was a substantial step toward the commission of . . . [first-degree] Sexual Abuse . . . , and was done for the purpose of committing such [crime]."

On appeal, Bjorgo argues that the evidence was insufficient to support the allegation that he took a substantial step toward the commission of first-degree sexual abuse insofar as there was no evidence that he did anything overtly sexual or that he made any effort to actually touch Victim in a manner constituting sexual contact. In short, he argues that the evidence was insufficient to establish that he assaulted Victim "with the purpose of committing" first-degree sexual abuse. We disagree.

"The 'attempt' statute, § 564.011, does not require that an actual and specific attempt be made to perform each and every element of the crime." *State v. Kendus*, 904 S.W.2d 41, 43 (Mo. App. S.D. 1995). "Moreover, 'a defendant's overt act need not be the ultimate step toward, or the last possible act in the consummation of the crime attempted.'" *Id.* (quoting *State v.*

7

*Thomas*, 670 S.W.2d 138, 139 (Mo. App. S.D. 1984)). "The fact that further major steps must be taken by the actor to complete the offense attempted does not render an act insubstantial." § 564.011, Comment to the 1973 Proposed Code. In other words, "[t]he substantial step is not required in itself to be enough evidence to go to the jury on the issue of purposive conduct. If, for example, there is a confession, so that there is clear evidence of purpose, the substantial step would be merely an additional indication of the actor's purpose." *Id*. As such, the premise of Bjorgo's argument—that the State needed to prove that he tried to touch Victim in a sexual manner or that he acted, himself, in a sexual manner—is faulty. The State was not required to prove that Bjorgo did anything sexual during the assault; it needed to prove only that the actions he *did* take were for the purpose of committing first-degree sexual abuse and that he took a substantial step to that end. Thus, the only issue before us is whether the State proved that, when assaulting Victim, Bjorgo did so with the intent to commit first-degree sexual abuse.

A similar issue was addressed by the Southern District of this court in *State v. Corona*, 685 S.W.2d 931 (Mo. App. S.D. 1985). In *Corona*, the defendant was charged with first-degree burglary for unlawfully entering an apartment with the intent to commit forcible rape therein. *Id*. at 932. The facts indicated that the defendant burst into the victim's home without invitation, ran toward the victim, and knocked her across her bed onto her back. *Id*. at 933. The victim strenuously fought the defendant until he eventually abandoned his attack and left the apartment. *Id*. Following his conviction, the defendant argued on appeal that the evidence was insufficient to support the jury's finding that he intended to commit forcible rape once inside the apartment because "there was no evidence that his actions were intended to force complainant to submit to sexual intercourse." *Id*. at 934. In making his argument, the defendant "point[ed] out that [the victim] testified her assailant neither touched her in a sexual manner nor made any sexual

8

comment. There was likewise no testimony that the attacker made any effort to remove or grab [the victim's] clothing." *Id*. at 935.

The Southern District rejected the argument, noting first that "a rational trier of fact could find that when [the defendant] burst into [the victim's] apartment and simultaneously assaulted her, he meant to accomplish his objective—whatever it was—by overcoming [the victim's] resistance and subduing her." *Id*. The court further noted that a factfinder could have determined "that [the victim's] resistance proved to be stronger than [the defendant] expected, and that because he was unable to overpower her as swiftly as he had anticipated, and because he feared her outcries would bring others to her aid, he decided to abandon his mission and flee before rescuers arrived." *Id*. As to the question of whether the evidence was sufficient for a factfinder to determine that the purpose of the attack was to compel the victim to submit to sexual intercourse, the court held that it was. *Id*. at 935-36. In reaching this conclusion, the court noted that "there was no prior relationship between the defendant and the victim," "the intrusion occurred at a time when the victim could be expected to be [alone and] in bed," "there was no evidence . . . of any attempt to take anything from [the victim's] apartment," and "there was likewise no evidence that [the defendant] had any . . . motivat[ion] . . . to kill or injure her." *Id*. at 936. Relying on a prior Missouri Supreme Court case that held similar evidence sufficient to support a finding of intent to rape, the Southern District upheld the conviction. *Id*. (citing *State v. Selle*, 367 S.W.2d 522 (Mo. 1963)).

Here, as in *Corona*, there was no prior relationship between Victim and Bjorgo; the attack occurred in an empty women's restroom, where Bjorgo could expect a woman to appear alone and in a vulnerable position; there was no evidence that Bjorgo intended to take anything from Victim; nor was there evidence that Bjorgo had any motivation to kill or injure Victim.

9

Furthermore, unlike many cases where a factfinder must rely on only circumstantial evidence of a defendant's intent, here there is direct evidence of Bjorgo's intent through his statement to police, wherein he said that he acted with the purpose of both seeing and touching Victim's breasts.[7] And the substantial step he took toward accomplishing that purpose was to hide in the women's restroom and then attack Victim when she was in there alone. As such, the evidence was sufficient to support Bjorgo's conviction of attempted first-degree sexual abuse and its corresponding count of armed criminal action.

Point I is denied.

## B. The verdict director adequately stated all elements for attempted sexual abuse.

In his second point on appeal, Bjorgo argues that the verdict director for attempted first-degree sexual abuse omitted a requisite element of the offense (specifically, that Bjorgo tried to touch Victim's breast) and, therefore, the trial court plainly erred in submitting the instruction to the jury.[8] We disagree.

"[I]nstructional error is seldom plain error, and to demonstrate plain error with regard to an instruction, [an appellant] must establish not mere prejudice, but rather a manifest injustice or miscarriage of justice." *State v. Moriarty*, 914 S.W.2d 416, 421 (Mo. App. W.D. 1996). "In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994), *overruled on other grounds by Deck v. State*, 68 S.W.3d 418, 427 n.3 (Mo. banc 2002).

---

[7] This is the exact scenario contemplated by the Comment to the 1973 Proposed Code for § 564.011 mentioned, *infra*, on page 8.

[8] Bjorgo acknowledges that he failed to object below on the theory he advances on appeal and further failed to include such a claim in his motion for new trial. As such, he requests plain error review.

Instruction number 14, the verdict director for attempted first-degree sexual abuse, instructed the jury as follows:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about May 4, 2015, in the County of Clay, State of Missouri, the defendant with the intent to touch the breasts of [Victim], assaulted [Victim] in the women's restroom while displaying a sharp instrument in a threatening manner, and
>>
>> Second, that such conduct was a substantial step toward the commission of the offense of sexual abuse in the first degree of [Victim] at 1000 E. Highway 92, Kearney, Clay County, Missouri, and
>>
>> Third, that defendant engaged in such conduct for the purpose of committing such sexual abuse in the first degree,
>
> then you will find the defendant guilty under Count III of an attempt to commit sexual abuse in the first degree.
>
>> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
>> A person commits the crime of sexual abuse in the first degree when . . . first, he has sexual contact with [Victim] by touching the breast of [Victim] through the clothing, and second, he does so for the purpose of gratifying his own sexual desire, and third, he does so by use of forcible compulsion, and fourth, in regards to the facts and circumstances submitted in this instruction he acted knowingly, and fifth, . . . in the course of this conduct he displays a dangerous instrument in a threatening manner.
>
>> As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of sexual abuse in the first degree.

This instruction was based on MAI-CR3d 304.06 (the attempt instruction), as modified by MAI-CR3d 320.77 (the first-degree sexual abuse instruction).

Bjorgo complains that the paragraph denominated "First" fails to comply with the applicable Notes on Use insofar as it alleges, as the purported substantial step, that Bjorgo "with

11

the intent to touch the breasts of [Victim], assaulted [Victim] in the women's restroom while displaying a sharp instrument in a threatening manner," rather than alleging that Bjorgo "tried to touch Victim's breasts." According to Bjorgo, the conduct the State was required to allege and identify as the purported substantial step toward committing the crime of first-degree sexual abuse had to be that Bjorgo tried to touch Victim's breasts. In making this argument, he relies on the following language from Note on Use 2 for MAI-CR3d 304.06:

> The conduct required for an attempt is a "substantial step" toward the commission of the object crime. If the conduct alleged to constitute the substantial step is actually trying to achieve the result of the object crime, it should be described in general terms, such as "shot at John Doe," "tried to have sexual intercourse with S.D.," "tried to start a fire (in a particular building)," etc.

But, as the State correctly points out, Bjorgo ignores the remaining part of Note on Use 2, which provides:

> If the conduct is further removed from the result of the object crime, it should be described in general terms such as "lying in wait for John Doe," "soliciting another person to commit" the offense, "assembling equipment to be used in the commission of" the offense, etc. The victim or property involved should be identified.

*Id*.

As discussed, *supra*, "a defendant's overt act need not be the ultimate step toward, or the last possible act in the consummation of the crime attempted." *Kendus*, 904 S.W.2d at 43 (quoting *Thomas*, 670 S.W.2d at 139). And, as the Notes on Use contemplate, the conduct forming the alleged substantial step could be "further removed from the result of the object crime." Here, the conduct that the State alleged as Bjorgo's substantial step was his act of assaulting Victim in the women's bathroom while displaying a sharp instrument in a threatening manner with the intent to touch her breasts. That allegation fully complies with Note on Use 2

12

for MAI-CR3d 304.06. As such, the State included all requisite elements, and Bjorgo has failed to demonstrate any error, much less plain error.

Point II is denied.

**C. The written judgment failed to accurately reflect the oral pronouncement of sentence for first-degree assault.**

For his final point, Bjorgo argues that the written sentence and judgment reflects a clerical error insofar as it indicates that his sentence for Count I (first-degree assault) is life without parole, when the sentence pronounced orally by the court during Bjorgo's sentencing hearing was simple life imprisonment. As such, he urges this court to "remand the case with instructions that the Circuit Court enter a new Judgment *nunc pro tunc*, removing the 'without parole' after 'life' in the first part of the judgment."

The State concedes error on this point and also urges this court to "direct the trial court to correct the written judgment via a *nunc pro tunc* order to conform to the trial court's oral pronouncement of Defendant's sentences at the time of sentencing."

"Clerical errors in the sentence and judgment in a criminal case may be corrected by an order *nunc pro tunc* if the written judgment does not reflect what actually was done." *State v. Lemasters*, 456 S.W.3d 416, 426 (Mo. banc 2015). "In a criminal case, Rule 29.12(c) allows the court to 'amend its records according to the truth, so that they should accurately express the history of the proceedings which actually occurred prior to the appeal.'" *Id*. (quoting *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 663 (Mo. banc 2014)).

We agree with both parties that the written sentence and judgment does not accurately reflect the oral pronouncement of Bjorgo's sentence for first-degree assault. "Accordingly, this is a proper circumstance—indeed, the prototypical circumstance—for an order *nunc pro tunc* correcting the written judgment to reflect what actually occurred." *Id*.

13

Point III is granted.

## Conclusion

Because the evidence was sufficient and the verdict director complied with MAI-CR3d, the judgment as to Bjorgo's convictions for attempted first-degree sexual abuse and its corresponding count of armed criminal action are affirmed. As Bjorgo raised no challenge to his convictions for either first-degree assault or its corresponding count of armed criminal action, those convictions are also affirmed. We must, however, issue a limited remand with directions that the trial court enter an order *nunc pro tunc* correcting the written sentence and judgment with respect to Bjorgo's conviction for first-degree assault to reflect a sentence of life imprisonment, rather than one of life without parole.

_____
Karen King Mitchell, Chief Judge

Alok Ahuja and Thomas N. Chapman, Judges, concur.