

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86724 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | February 4, 2025 |
| MARK A. FIELDER, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
**The Honorable Robert L. Koffman, Judge**

**Before Division Four:** Anthony Rex Gabbert, Chief Judge, Presiding,
Karen King Mitchell and Cynthia L. Martin, Judges

Mark Fielder appeals, following a jury trial, his conviction for first-degree murder, pursuant to § 565.020.1.[1] Fielder raises two points on appeal: (1) the circuit court erred in overruling his motion for judgment of acquittal on grounds of insufficient evidence by which any rational juror could find beyond a reasonable doubt that Fielder deliberated before shooting the victim; and (2) the circuit court erred in writing Fielder's sentence for unlawful use of a weapon as "999 years" instead of the court's oral pronouncement of

---

[1] All statutory references are to the Missouri Revised Statutes (2016), unless otherwise noted.

"life," a clerical error requiring correction pursuant to Rule 29.12(c).[2]  We affirm in part and remand for correction of the clerical error in sentencing.

## Background[3]

In the early morning hours of February 2022, Fielder left his home in Pettis County, with his two minor children and a handgun, to follow a white Chevy Blazer that Fielder believed was occupied by a man who had stolen fishing poles from the porch of Fielder's house.  Fielder was upset about previous thefts of property.  The driver of the Blazer (Driver) had just picked up a man (Victim) in response to Victim's text message asking Driver for a ride; Victim did not have any fishing equipment with him at that point, but several fishing poles were later found in a nearby ditch.  Fielder testified that he had brought his handgun for protection and did not want to leave his children alone at his house.

After Fielder had followed the Blazer for several blocks, the Blazer pulled to the side of the road and stopped.  Fielder also stopped, got out of his vehicle, and approached the Driver's side of the Blazer while pointing his gun at Driver.  Fielder opened the door, ordered Driver to get out, then hit Driver with the gun when Driver refused.  Driver exited the vehicle as ordered and sat on the ground with his back to the side of the Blazer.  Driver heard Victim say, "If you think we stole something from you, you need to call the cops."  Fielder then walked around to the passenger side, opened the door, and told

---

[2] All rule references are to the Missouri Supreme Court Rules (2023).

[3] We view the evidence "in the light most favorable to the verdict." *State v. Howell*, 626 S.W.3d 758, 760 n.1 (Mo. App. W.D. 2021) (quoting *State v. Anglin*, 45 S.W.3d 470, 471 (Mo. App. W.D. 2001)).

Victim "to get out of the vehicle," which Victim refused to do. Fielder had looked into the vehicle from both the driver's side and the passenger side, and while he had seen a screwdriver on the floorboard, he had seen no weapons.

Fielder testified that Victim was "kicking and swinging at" Fielder, but Driver did not feel the Blazer shaking or perceive any physical altercation occurring inside the Blazer. According to Driver, the only exchange between Fielder and Victim was "[j]ust to get out of the vehicle, and [Victim] refused to. And then I heard a gunshot." Fielder saw that Victim, shot in the face, was still alive but was bleeding and struggling to breathe. Driver testified that Fielder then returned to the driver's side of the vehicle, "pointed the gun at my face and told me 'you're next.'" Fielder's son then implored him to leave, which Fielder did, driving back home with his children.

When he got home, Fielder cleaned and hid the handgun that he had used to kill Victim. He did not call anyone for medical or law enforcement assistance. He was arrested the following evening, charged, and convicted of six crimes, including Count I (first-degree murder pursuant to § 565.020.1) and Count III (class A unlawful use of a weapon pursuant to § 571.030.1). This appeal concerns his claims that the murder conviction is not supported by sufficient evidence of deliberation and that the sentence for Court III contains a clerical error.

**Analysis**

Fielder raises two points on appeal: (1) the circuit court erred in overruling his motion for judgment of acquittal on grounds of insufficient evidence by which any rational juror could find beyond a reasonable doubt that he deliberated before shooting

Victim; and (2) the circuit court erred in writing Fielder's sentence for first-degree murder as "999 years" instead of the court's oral pronouncement of "life," a clerical error that is curable pursuant to Rule 29.12(c). We affirm the conviction for first-degree murder but remand for correction of the clerical error in sentencing.

I.    **The circuit court did not err in overruling Fielder's motion for acquittal because there was sufficient evidence to support the deliberation element of his conviction for first-degree murder.**

Our review of an insufficient evidence claim "is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011). The question is "whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 509 (quoting *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010)). Therefore, "all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence," and "[a]ll evidence and inferences to the contrary are disregarded." *Id.* And "[c]ircumstantial rather than direct evidence of a fact is sufficient to support a verdict," including "evidence support[ing] equally valid inferences." *State v. Lehman*, 617 S.W.3d 843, 847 (Mo. banc 2021).

We recognize that "the [jury] may believe all, some, or none of the testimony of a witness" when considering the evidence in the case. *Nash,* 339 S.W.3d at 509 (quoting *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008)). If, based on the evidence presented, the jury "*reasonably* could have found the defendant guilty," then sufficient evidence supports its verdict. *Lehman*, 617 S.W.3d at 847 (emphasis in original)

4

(quoting *State v. Claycomb*, 470 S.W.3d 358, 362 (Mo. banc 2015)). However, we cannot "supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *Id.* (quoting *State v. Langdon*, 110 S.W.3d 807, 812 (Mo. banc 2003).

A first-degree murder conviction requires proof that the defendant "knowingly cause[d] the death of another person after deliberation upon the matter." § 565.020.1; *State v. Sander*, 682 S.W.3d 85, 93 (Mo. App. W.D. 2023). "Deliberation" is defined as "cool reflection for any length of time no matter how brief." § 565.002.(5). "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested. Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). Deliberation includes "a free act of the will done in furtherance of a formed design to gratify a feeling of revenge." *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D. 2007) (quoting *State v. Jones*, 955 S.W.2d 5, 12 (Mo. App. W.D. 1997)). "Deliberation, like most elements of mens rea, must ordinarily be proved through proof of the circumstances surrounding the killing." *State v. O'Brien*, 857 S.W.2d 212, 218-19 (Mo. banc 1993).

The jury may infer deliberation "from the circumstances surrounding the crime, and such an inference is supported by a lack of concern for and a failure to attempt to aid the victim." *Sander*, 682 S.W.3d at 93 (quoting *State v. Alexander*, 505 S.W.3d 384, 393 (Mo. App. E.D. 2016)). "A defendant's conduct after the murder, as well as the disposal

5

of evidence, can also support a finding of deliberation." *State v. Howery*, 427 S.W.3d 236, 246 (Mo. App. E.D. 2014). "Deliberation can be inferred from a defendant's attempt to dispose of evidence and flight." *State v. DeRoy*, 623 S.W.3d 778, 786 (Mo. App. E.D. 2021) (finding that evidence of defendant's leaving the scene and washing the clothing he had worn during the murder supported an inference of deliberation). The *DeRoy* court recognized that "[t]he jury did not have to find deliberation from this evidence" but that it "was sufficient to allow such an inference." *Id.*

Here, the evidence and reasonable inferences that could be drawn from that evidence are sufficient to support the jury's finding of deliberation. Although Fielder claimed he struggled with Victim and that struggle caused him to discharge the gun by accident, the jury was free to disbelieve his testimony, especially given Driver's testimony that he heard and felt no evidence of a physical altercation. And Fielder's immediate reaction to the shooting was not to express shock or regret, to seek help for Victim, or to call 911, but instead to threaten to shoot Driver, then simply to leave the scene at his son's urging. Fielder never called the police or sought help for Victim. The jury could also reasonably infer that Fielder disposed of evidence after the shooting. No shell casing was found at the scene of the crime; Fielder testified that "the gun discharged as [Victim] grabbed" for it and that Victim's act must have caused the shell casing to get "stuck in the gun" instead of ejecting. Yet Fielder did not explain why, when he supposedly discovered the casing while cleaning the gun, he decided to throw the casing away. The jury also could reasonably infer that Fielder discarded the bloody clothing he wore at the scene. No bloody clothing was found at Fielder's home, and Fielder claimed

that the clothes he had worn at the scene had no blood or blood spatter on them. Yet Fielder had shot Victim at close range—no more than an arm's reach away—and blood was found throughout the interior of the Blazer and on the exterior of its doors.

The evidence also supports that Fielder acted out of revenge, after cool reflection. He was upset about previous thefts of his property. He claimed to have followed the Blazer simply to determine the identity of the person he suspected of stealing his fishing poles, yet Fielder took neither his cell phone nor any other means of recording that information. He took a gun and used it on both occupants of the Blazer, even after he could see they were unarmed and the only possible makeshift weapon in the Blazer was a screwdriver that remained on the floorboard. The evidence and inferences are sufficient to allow a rational juror to find that Fielder deliberated before he shot Victim. Count I is denied.

**II.     The circuit court's written judgment did not accurately record the court's oral pronouncement of sentence of "life" for Count III and must be corrected by a *nunc pro tunc* order.**

The punishment for Count III—the class A felony of unlawful use of a weapon causing death—is "a term of years . . . not to exceed thirty years, or life imprisonment." §§ 571.030.1(9); 571.030.8(4); 558.011.1(1). At sentencing, the circuit pronounced sentence on Count III as "life in the Missouri Department of Corrections." Both parties agree that the written sentence of "999 years" entered for Count III misstates the court's oral pronouncement and that "the oral pronouncement controls." *See State v. Young*, 662 S.W.3d 198, 200 (Mo. App. S.D. 2023). "Clerical errors in the sentence . . . may be corrected by an order *nunc pro tunc* if the written judgment does not reflect what actually

7

was done." *See State v. Bjorgo*, 571 S.W.3d 651, 660 (Mo. App. W.D. 2019) (quoting *State v. Lemasters*, 456 S.W.3d 416, 426 (Mo. banc 2015)). Such clerical errors are "the prototypical circumstance" for a *nunc pro tunc* order. *Id.* at 661 (quoting *Lemasters*, 456 S.W.3d at 426). Point II is therefore sustained, and we remand to the circuit court with directions to correct the error, changing Fielder's written sentence from "999 years" to "life" as pronounced at sentencing.

## Conclusion

The judgment of conviction for first-degree murder is affirmed and the case remanded to conform the written sentence on Count III to "life" as imposed orally at sentencing.

_____
Karen King Mitchell, Judge

Anthony Rex Gabbert, Chief Judge, Presiding, and Cynthia L. Martin, Judge, concur.

8